### Staunton.

### BROTHERHOOD OF RAILROAD TRAINMEN V. VICKERS.

September 20, 1917.

Absent, Sims, J.

1. DECLARATION—*Sufficiency.*—The test of the sufficiency of every declaration is, does it state a case, and does it state the facts with sufficient certainty to be understood by the defendant who is to answer it, the jury who are to try the issue, and the court which is to render judgment.

2. CONTRACTS—*Interference with Contract Relation—Master and Servant—Declaration—Case at Bar.*—A declaration which alleged wrongful and unjustifiable interference by the defendant with the contractual relation existing between plaintiff and a railroad company, his employer, whereby the seniority rights acquired by plaintiff as an incident to his employment were seriously affected, the result of which was the taking from the plaintiff of regular runs and better pay, and the reduction of his regular monthly pay as brakeman and flagman from $100.00 to $20.00, states a good cause of action and measures up to the required standard under the procedure in this State.

3. WITNESSES — *Character — Witness also a Party — Ante Litem Motam.*—In a criminal prosecution or some other controversy involving the moral character of a party, the evidence must be limited to his general reputation *ante litem motam;* and in such case when a witness is also a party, it would seem that the rule applicable to parties should apply. But when a party is also a witness and his character is not in issue upon the pleadings, and the question of his general reputation for truth and veracity arises in the usual way dissociated from any charge of turpitude, he stands as any other witness, and evidence of his reputation, even up to the time of testifying, is generally regarded as admissible

4. WITNESSES—*Character Evidence.*—The fact that witnesses who testify as to the reputation of a witness who is also a party, were parties to the litigation, affects the credibility, but not the competency of the character witnesses.

5.  WITNESSES — *Character* — *Community* — *Neighborhood.*—Fellow workmen of a brakeman and flagman on a railroad and other persons with whom he came in daily contact at the termini of the road and along the line of his route, are of his community and neighborhood within the rule that confines testimony as to the general reputation of a witness for truth and veracity to members of the community or neighborhood in which the witness lives.

6.  WITNESSES—*Neighborhood.*—A man's neighborhood or place of residence extends for the purpose of impeaching him as a witness as far as he is well known, as far as people are acquainted with him and his character. The impeaching witness must "know his reputation among his general associates."

Error to a judgment of the Corporation Court of the city of Bristol, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*John W. Price, J. C. Wilburn* and *F. W. DeFriece,* for the plaintiff in error.

*Gilmer & Stant* and *Geo. W. Warren,* for the defendant in error.

WHITTLE, P., delivered the opinion of the court.

This was an action of trespass on the case brought by Vickers against the Brotherhood of Railroad Trainmen (who will hereafter be called plaintiff and defendant) to recover damages for the alleged wrongful and unjustifiable interference by the defendant with the contractual relation existing between plaintiff and the Virginia and Southwestern Railway Company, his employer, whereby the seniority rights acquired by plaintiff as an incident to his employment were seriously affected, the result of which

was the taking from plaintiff of regular runs and better pay, and the reduction of his regular monthly pay as brakeman and flagman from $100.00 to $20.00. The trial resulted in a verdict and judgment for the plaintiff for $1,500.

1. There was a demurrer to the declaration, which the court overruled and that ruling is made the first assignment of error. We think the action of the court in overruling the demurrer was plainly right. The declaration states a good cause of action and measures up to the required standard under the procedure in this State.

In Burks' Pleading and Practice, p. 346, it is said: "The test of the sufficiency of every declaration is, does it state a case, and does it state the facts with sufficient certainty to be understood by the defendant who is to answer it, the jury who are to try the issue, and the court which is to render judgment."

The allegations of this declaration furnish an affirmative answer to each of these queries.

2. The only other assignment of error which calls for special notice involves the ruling of the court in excluding the testimony of a number of character witnesses who were introduced by defendant to impeach the general reputation of plaintiff, who had testified in his own behalf, for truth and veracity. The ruling involved a number of witnesses, the exception to whose testimony is set out in bills of exceptions 4, 5, 7, 8 and 9. After considerable colloquy between the court and counsel for defendant, the court definitely ruled on the question as follows: "In view of the rule laid down in section 1618 of Wigmore on Evidence, volume 2, 'that reputation at any time after a charge published, or other controversy begun, is not admissible,' the court excluded the testimony of this witness."

An examination of section 1618 shows that the court was led into error by failing to observe the distinction drawn by the learned author between proof of the general repu-

tation of a *party,* and the general reputation of a *witness* for truth and veracity. With respect to the former he observes, "(a) Where the desired character is that of a *party*—for example, the defendant in a criminal charge, the prosecutrix in a rape charge, or the plaintiff in a statutory action for seduction—it is obvious that after the charge has become a matter of public discussion, and partisan feeling on either side has had an opportunity to produce an effect, a false reputation is likely to be created—a reputation based perhaps in part upon rumors about the very act charged or upon the interested utterances of either party. The safeguards of trustworthiness are here lacking; * * * Accordingly, it is generally agreed that a reputation at any time after a charge published, or other controversy began, is not admissible. * *.*

"(2) In the case of a *witness,* the conditions above pointed out do not usually affect his reputation, because his conduct is not the subject of the controversy. Moreover, although a witness may sometimes be so related to the controversy or to the parties as to have suffered in consequence of partisan feeling, yet the situation hardly requires that as a general rule a limitation to reputation *ante litem motam* should be enforced. Accordingly the reputation of a witness, even up to the time of testifying, is generally regarded as admissible. Where the witness is also a party, it would seem that the rule applicable to a party should apply."

As we understand the qualification last above referred to, it means this, that in a criminal prosecution or some other controversy involving the moral character of a party, the evidence must be limited to his general reputation *ante litem motam;* and that in such case "when the witness is also a party, it would seem that the rule applicable to parties should apply." The reason for the qualification would seem to be that otherwise a rule designed to shield a party

against the *post litem* influence of the prosecution or a charge involving his moral character would practically be abrogated should he exercise the privilege of becoming a witness in his own behalf.   In the chapter in which section 1618 occurs, Professor Wigmore is discussing exceptions to the hearsay doctrine, and the qualification to the general rule when the individual whose moral character is directly in issue occupies the dual relation of party and witness only applies when his character is in issue upon the pleadings, and not when the question of his general reputation for truth and veracity arises in the usual way dissociated from any charge of turpitude.   In the latter instance he stands as any other witness, and is subject to the general rule and not to the exception.   The learned author cites for the qualification, *State* v. *Marks,* 16 Utah 204, 15 Pac. 1089, and against it *State* v. *Sprague,* 64 N. J. L. 419, 45 Atl. 788; *Commonwealth* v. *Hourigan,* 89 Ky. 313, 12 S. W. 550; *Renfro* v. *State,* 42 Tex. Cr. 393, 56 S. W. 1013.

But it is insisted that the evidence was inadmissible for the further reasons that the witnesses were parties to the litigation, and, besides, that they were not acquainted with the general reputation of the plaintiff for truth and veracity in the community in which he lived.   The first ground affects the credibility, but not the competency of the witnesses.   *Brown* v. *U. S.,* 164 U. S. 225, 17 Sup. Ct. 33, 41 L. ed. 411.

Plaintiff, as we have seen, was a brakeman and flagman on the Virginia and Southwestern Railway, and the second objection makes the point that his fellow workmen and other persons with whom he came in daily contact at the termini of the road and along the line of his route were not of the community in which he lived.   This we conceive

is a misconception of the rule and the reason upon which it rests. The place of acquiring reputation is not confined to actual residence.

In 30 Am. & Eng. Ency. of Law, p. 1079, it is said: "A man's neighborhood or place of residence extends for these purposes as far as he is well known, as far as people are acquainted with him and his character." The impeaching witness must "know his reputation among his general associates."

The case of *Smith* v. *United States,* 161 U. S. 85, 16 Sup. Ct. 483, 40 L. ed. 626, is instructive in this aspect of the question. It was there held: "On a trial for murder, where several witnesses who testified that the deceased had the reputation of being a quarrelsome and dangerous character, had been arrested for various offenses, and on one of them convicted, while none of them had kept a gambling place, an instruction to the jury to cast aside as worthless matter such testimony if it comes from 'keepers of dives and gambling houses and gambling hells and violators of law and prison convicts,' with reiterated statements to the effect that men of pure character only are competent to know what character is—is error, and entitles the defendant to a new trial, as the credibility of witnesses is a matter for the jury, and the instruction withdrew this matter from their consideration."

Mr. Justice Gray, in delivering the unanimous opinion of the court, observed: "The character of a quarrelsome and dangerous man is not always so well known to peaceable and law-abiding citizens that their testimony upon the subject can be had. In this, as in other matters involved in the administration of the criminal law, it is often necessary to resort to those who are more familiar with the persons between whom, and in the places in which, quarrels and affrays are apt to take place."

Those most likely to be acquainted with the general reputation of the plaintiff for truth naturally might be expected to be found among his associates engaged in a common employment. Nor is it an unreasonable construction to hold that the neighborhood of one engaged in local railroading is coextensive with the line over which he works, and that persons with whom he comes in daily contact and with whom he is familiarly acquainted should be classed as neighbors in the true sense of the rule in question.

Upon these considerations, we are of opinion that the trial court erred in excluding the testimony of the witnesses offered by defendant to prove the general reputation of plaintiff for truth and veracity *post litem motam.* For which error the judgment must be reversed and the case remanded for a new trial.

There were other assignments of error, mostly in regard to the ruling of the court on instructions, but they were not pressed and it is unnecessary to consider them as they may or may not arise at the next trial.

*Reversed.*