322 So.2d 68 (1975)
FLORIDA EAST COAST RAILWAY CO., a Florida Corporation, Appellant,
v.
Ethel K. HUNT, Administratrix of the Estate of Russell G. Hunt, Deceased, Appellee.
No. 74-1190.
District Court of Appeal of Florida, Third District.
October 28, 1975.
Rehearing Denied December 1, 1975.
Bolles, Goodwin, Ryskamp & Welcher, Miami, for appellant.
Podhurst, Orseck & Parks, Colson & Hicks, Miami, for appellee.
Before BARKDULL, C.J., and PEARSON and HENDRY, JJ.
PEARSON, Judge.
The defendant, Florida East Coast Railway Company, appeals a final judgment entered upon a jury verdict for the plaintiff, Ethel K. Hunt, Administratrix of the Estate of Russell G. Hunt. The jury found Russell Hunt to have been 90% at fault and the Railroad 10% at fault in causing the accident that is the subject of this litigation.
The accident occurred when Russell Hunt drove his car into the side of an F.E.C. Railroad Company flatcar which was engaged in a switching operation and blocking a railroad crossing at N.W. 71st *69 Street near N.W. 36th Court in Miami, Florida. The collision took place at about 6:30 in the evening just as it was getting dark. Mr. Hunt died as a result of the injuries sustained.
Florida law[1] requires a railroad crew to place lighted fusees in the roadway when the crew is engaged in a switching operation from one-half hour after sunset to one-half hour before sunrise. The engineer of the train, Mr. Smith, and the conductor, Mr. Loftus, testified that lighted fusees had been placed prior to the accident. The switchman, Mr. Patterson, testified that the fusees had not been placed prior to the accident but that several were placed after the accident. He explained his prior contrary statement to the effect that fusees had been placed prior to the accident by asserting that he made the statement because he and two other members of the crew had agreed to "... keep their stories together."
The factual issue as to whether the fusees had been placed prior to the accident became the main issue in the trial. The Railroad in order to counter the damaging effect of Patterson's testimony, attempted to offer the testimony of two Railroad employees to show that Patterson's general reputation for truth and veracity was bad among his fellow employees at the Railroad. The two witnesses whose testimony was proffered were Mr. Loftus, mentioned above, and a Mr. Stack, who was Patterson's railroad superintendent. The trial court sustained the plaintiff's objection to the testimony upon the ground that such proffered testimony of the two witnesses was not admissible to show the general reputation of the witness Patterson. The ruling is assigned as error and is the point most strongly urged on this appeal.
We hold that error does not appear because the general rule that testimony with regard to reputation for truth and veracity must be bottomed upon the reputation in the person's community of residence and neighborhood is controlling.
See Nelson v. State, 1893, 32 Fla. 244, 13 So. 361; Stanley v. State, 1927, 93 Fla. 372, 112 So. 73, and Ecker v. National Roofing of Miami, Inc., Fla.App. 1967, 201 So.2d 586. The defendant acknowledges this to be the general rule in Florida but urges that this State has recognized an exception to the rule in Hamilton v. State, 1937, 129 Fla. 219, 176 So. 89, and that the exception is applicable here.
In considering the law as to reputation witnesses, we initially point out that we fully concur and agree that Hamilton does state an exception to the general rule, where the proper circumstances exist. In that case, there was a showing of an unavailability of reputation witnesses from the community or neighborhood where the defendant lived and a further showing that the defendant was well known among the people with whom she worked. Upon appeal by the defendant, the Supreme Court held that the trial court should have allowed in as reputation witnesses the co-employees of the defendant. In the present case, however, there is no similar showing of an unavailability of reputation witnesses from the community or neighborhood where Patterson resided. We find, therefore, that a special problem is presented here. For, if we are to hold that Loftus and Stack should have been allowed to testify below as reputation witnesses, we are doing more than merely approving of the exception in Hamilton extending the general rule to include co-workers, but rather we would, in effect, be permitting persons to testify who are intimately involved in the very controversy being litigated, and who have vested interests in the outcome of the trial. To allow Loftus to testify that Patterson's reputation at work for truthfulness was bad would set a poor precedent in the law. Loftus would be bound in on all sides. That is to say that were he to testify that Patterson's reputation *70 for truthfulness at work was not good, he would, of course, simply be stating obliquely that Patterson's testimony about the lack of fusees displayed prior to the accident is untrue. Naturally, such testimony would be self-serving inasmuch as Loftus was himself a party to the alleged agreement that Patterson referred to. On the other hand, were Loftus to testify the other way and laud Patterson's reputation at work for truthfulness, he would then be as much as telling the jury that Patterson was correct in his testimony and that his story was true. Similar arguments can be made concerning the proffered testimony of the Railroad Superintendent, R.F. Stack. Though not a party to the alleged agreement of the employees to keep their stories together, Stack's position with the Railroad and his connections with the various principals and witnesses in the controversy place him in a posture not too much better than Loftus.
We note with interest, however, the contrary view taken in two very similar cases brought to our attention by the appellant. See Atlantic & B.R. Co. v. Reynolds, 1903, 117 Ga. 47, 43 S.E. 456, and Brotherhood of Railroad Trainmen v. Vickers, 1917, 121 Va. 311, 93 S.E. 577. From the reasoning in the Brotherhood of Railroad Trainmen case, we have inferred that our discussion set out above may be viewed as actually going to the question of "credibility" rather than to the question of "competency" to testify. Though we find merit in such reasoning, we nonetheless are more concerned with the intended and desired results to be gained from the testimony of reputation witnesses, that is, the gathering of evidence as to a person's "general reputation" in his or her "community" or "neighborhood." The rule, as we view it, is not one to be applied, relative to one's "working community," in too restrictive a manner so as to confine reputation testimony to particular co-employees. In other words, where there are close ties, as here, between the reputation witnesses and the matter in controversy, testimony relied on to ascertain the nature of one's "general" reputation in his community or neighborhood would be reduced to testimony rendered not from co-employees in the more normally understood meaning of that term, but rather from very specifically placed co-employees, testifying not about someone's "general" reputation, but rather about that reputation as viewed under the predominant cloud of the specific controversy at hand. Finally, the entire concept of "community" or "neighborhood," from which Hamilton extended the general rule to one's place of employment as well as one's place of residence would be reduced to that particular part of the "community" or "neighborhood" upon which the litigation itself is focused. In short, the Hamilton decision does not apply under the present circumstances.
We now turn to the defendant's remaining points, which are:
"Whether the lower court erred in failing to apply the doctrine of comparative negligence to the plaintiff's motion to tax costs;"
and
"Whether the lower court erred in failing to grant the defendant's motion for judgment notwithstanding the verdict when it appeared that the jury found the plaintiff's decedent to be 9 times more negligent than the defendant."
Having considered the arguments presented us, we find that neither point presents reversible error. As to the first point, see Spicuglia v. Green, Fla.App. 1974, 302 So.2d 772; as to the second point, see Hoffman v. Jones, Fla. 1973, 280 So.2d 431, 439.
Affirmed.
NOTES
[1] Fla. Stat. § 357.08.