348 So.2d 604 (1977)
BLAW-KNOX FOOD & CHEMICAL EQUIPMENT CORPORATION and Travelers Insurance Companies, Appellants,
v.
Seavy L. HOLMES and Agnes J. Holmes, His Wife, Frito Lay, Inc., and Fireman's Fund American Insurance Companies, Appellees.
BLAW-KNOX FOOD & CHEMICAL EQUIPMENT CORPORATION and White Consolidated Industries, Inc., Appellants,
v.
Seavy L. HOLMES and Agnes J. Holmes, His Wife, Appellees.
Nos. 76-1759 and 76-1760.
District Court of Appeal of Florida, Fourth District.
July 1, 1977.
*605 Leon H. Handley, Janis M. Halker and David C. Beers of Gurney, Gurney & Handley, Orlando, for appellants.
James W. Markel, Alan F. Scott, Jr., and John L. Graham, Jr., Graham, Markel & Scott, Orlando, for appellee Seavy L. Holmes.
John R. McDonough, Pitts, Eubanks, Ross & Rumberger, Orlando, for appellees Frito Lay, Inc., and Fireman's Fund American Ins. Co.
ALDERMAN, Judge.
Two appeals have been consolidated: Number 76-1760 is from a final judgment for Plaintiff-Appellee, Seavy L. Holmes, against Defendants-Appellants Blaw-Knox Food & Chemical Equipment Corporation and White Consolidated Industries, Inc.; Number 76-1759 is from a final judgment for Third Party Defendants-Appellees Frito Lay, Inc. and Fireman's Fund American Insurance Companies against Third Party Plaintiffs-Appellants Blaw-Knox Food & Chemical Equipment Corporation and Travelers Insurance Companies. Although we find no reversible error, a number of issues have been raised which merit discussion, specifically those relating to legal or proximate cause, the patent danger doctrine, reduction of taxable costs by comparative negligence, and contribution.
The facts are as follows: Mr. Holmes, an employee of Frito Lay, in the course of his employment, fell from atop a plywood board into the kettle of a potato chip cooker filled with hot oil. The potato chip cooker, known as an M-15 Ferry Fryer, was manufactured and sold to Frito Lay by the J.D. Ferry Co. Defendant Blaw-Knox is the successor in interest to the J.D. Ferry Co. and is a subsidiary of Defendant White Consolidated. The M-15 is basically a long kettle covered by a hood which is hinged to the frame on one side. Potato slices are fed into the back of the cooker by a conveyor system. The slices drop into hot cooking oil and are moved through the cooker by a succession of three turning flow wheels made of perforated metal. The kettle rests on a frame over a firebox. The oil is pumped through pipes heated by hot air and is continuously circulated through the cooker. Each end of the shaft on each flow wheel rests inside a U-shaped bearing mounted to the angle-iron frame of the kettle.
Mr. Holmes knew that the flow wheel in the M-15 had a tendency to pop out of the bearing on one side. When this occurs, the wheel rests catty corner on the bottom of the kettle, the chips cannot pass and the temperature of the oil rises due to lack of circulation. If the flow wheel became dislodged on the hinge side of the cooker, the normal procedure was for an employee of Frito Lay to place a pallet board across the machine, climb out over the hot oil and manually replace the flow wheel shaft into the bearing. Mr. Holmes himself had personally been over the fryer on a board or seen others do so some 150 times during his employment with Frito Lay.
At the time of the accident, Mr. Holmes was the Production Manager of the Orlando plant. After being advised of a problem with the M-15, he went to the kitchen and observed that the temperature gauge on the cooker showed 475 degrees and there was hot oil on the floor. He turned off the burners and blowers, and someone opened the hood of the cooker. Mr. Holmes stood on a ladder and saw that the second flow wheel was out of its bearing on the hinge side of the machine. Someone placed a board across the kettle between the first and second flow wheels, and Mr. Holmes climbed on top of the board and walked across the kettle to the hinge side. He grabbed the flow wheel with some paper towels and with the aid of a flashlight located the bearing and replaced the flow wheel shaft. Still standing on the board he took a broomstick and began stirring the *606 chips to clear the blockage. As he was walking across the board to get down, the board slipped and he fell into the hot oil.
Mr. Holmes in substance alleged that the defendants were negligent in that they:
(1) failed to design the machine so the flow wheels would remain intact;
(2) failed to establish procedures or devise a method whereby plaintiff could safely replace a dislodged flow wheel;
(3) failed to provide safeguard enclosures or other means of protection from the cooker: and
(4) failed to properly instruct the purchasers on the operation and maintenance of the cooker or to instruct on warnings that purchasers should give to their employees.
Under the doctrine of comparative negligence, the jury found that Mr. Holmes was 48% negligent and the defendants were 52% negligent. The trial court in the final judgment reduced the jury's verdict by the degree of Mr. Holmes' negligence. The jury, in its special verdict, also found that Blaw-Knox was guilty of active or primary negligence and that Frito Lay was guilty of passive or secondary negligence.
We turn now to a consideration of the legal issues in case number 76-1760. Blaw-Knox and White Consolidated contend that their alleged negligence, as a matter of law, was not a proximate or legal cause of Mr. Holmes' injuries. A close question is presented. As a general rule, however, the issue of proximate or legal cause is for the jury to determine, unless the issue is so clear that reasonable men could not differ. Loftin v. Wilson, 67 So.2d 185 (Fla. 1953). We recognize that there may be instances where the evidence is insufficient, and in those cases, the trial court may decide the issue as a matter of law, e.g., Courtney v. American Oil Co., 220 So.2d 675 (Fla.4th DCA 1968). In the present case, we conclude that the evidence was sufficient for the issue of proximate or legal cause to be submitted to the jury.
The defendants next contend that the trial court erred in not granting their motion for directed verdict based upon the patent danger doctrine. In support of this contention the defendants cite Farmhand, Inc. v. Brandies, 327 So.2d 76 (Fla.1st DCA 1976). The classic statement of the patent danger doctrine is that a "... manufacturer is under no duty to render a machine or other article `more' safe  as long as the danger to be avoided is obvious and patent to all." Campo v. Scofield, 301 N.Y. 468, 95 N.E.2d 802, 804 (1950). In Farmhand, the First District recognized that the holding of the New York court in Campo has been roundly criticized. It acknowledged that the Judicial Conference which recommended New York's comparative negligence statute said that the patent danger rule should be considered as a factor to be weighed by the trier of fact in determining whether to diminish damage. At the time the Farmhand opinion was issued, February 11, 1976, it remained to be seen whether the New York court could accept the transformation of the patent danger rule from an exception to liability to a mitigating affirmative defense.
On April 8, 1976 the Court of Appeals of New York announced, "The time has come to depart from the patent danger rule enunciated in Campo v. Scofield." The New York court in Micallef v. Miehle Co., 39 N.Y.2d 376, 384 N.Y.S.2d 115, 348 N.E.2d 571 (1976), said:
Apace with advanced technology, a relaxation of the Campo stringency is advisable. A casting of increased responsibility upon the manufacturer, who stands in a superior position to recognize and cure defects, for improper conduct in the placement of finished products into the channels of commerce furthers the public interest. To this end, we hold that a manufacturer is obligated to exercise that degree of care in his plan or design so as to avoid any unreasonable risk of harm to anyone who is likely to be exposed to the danger when the product is used in the manner for which the product was intended . .. .
......

*607 We next examine the duty owing from a plaintiff or, in other words, the conduct on a plaintiff's part which will bar recovery from a manufacturer. As now enunciated, the patent-danger doctrine should not, in and of itself, prevent a plaintiff from establishing his case. That does not mean, however, that the obviousness of the danger as a factor in the ultimate injury is thereby eliminated, for it must be remembered that in actions for negligent design, the ordinary rules of negligence apply... . Rather, the openness and obviousness of the danger should be available to the defendant on the issue of whether plaintiff exercised that degree of reasonable care as was required under the circumstances. (Citations omitted.) 384 N.Y.S.2d at 121-122, 348 N.E.2d at 577-578.
Deprived of its support from New York, the viability of the patent danger doctrine in Florida has further been put in doubt by the recent Florida Supreme Court opinion in Blackburn v. Dorta, 348 So.2d 287 (Fla., opinion filed May 4, 1977). In Blackburn, the Court held that the affirmative defense of assumption of risk is merged into the defense of contributory negligence, and that the principles of comparative negligence enunciated in Hoffman v. Jones, 280 So.2d 431 (Fla. 1973), apply in all cases where such defense is asserted. The Court said there was no discernible basis analytically or historically to maintain a distinction between the affirmative defense of contributory negligence and assumption of risk. The Court found assumption of risk to be a viable, rational doctrine only in the sense that it connotes unreasonable conduct on the part of the plaintiff, which is equivalent to contributory negligence. The Court apparently accepted the argument that assumption of risk serves no purpose which is not subsumed by either the doctrine of contributory negligence or the common law concept of duty.
As suggested by the New York court in Micallef, the patent danger doctrine amounts to an assumption of risk defense as a matter of law, with the added disadvantage that the defendant is relieved of the burden of proving that the plaintiff subjectively appreciated a known risk. So, by the same rationale that the Supreme Court in Blackburn held that assumption of risk is merged into the defense of contributory negligence and the principles of comparative negligence, we now hold that the patent danger doctrine is also merged into the defense of contributory negligence and the principles of comparative negligence.
The defendants also contend, if the judgment against them is affirmed, that the court costs taxed against them should be apportioned according to fault under the principles of comparative negligence. This is the first time this issue has been presented to this court, but it has been decided by other appellate courts in Florida. Spicuglia v. Green, 302 So.2d 772 (Fla.2d DCA 1974), cert. den. 315 So.2d 193 (Fla. 1975); Florida East Coast Ry. Co. v. Hunt, 322 So.2d 68 (Fla.3d DCA 1975). The defendants recognize that these precedents are contrary to their position, but urge us to adopt a different rule. We reject this suggestion and hold that in a comparative negligence situation where there is no counterclaim, as in the present case, there can be no apportionment of taxable costs according to fault under the principle of comparative negligence. We are not here faced with and have not considered the question of what the rule should be if there is a counterclaim. Compare: Spicuglia v. Green, supra.
Next, we consider an issue raised in case number 76-1759. Blaw-Knox contends that the trial court erred in directing a verdict in favor of Frito Lay on Blaw-Knox's third party claim for contribution. This contention is without merit. Mr. Holmes was an employee of Frito Lay and was covered by and received benefits under the provisions of the Florida Workmen's Compensation Act. The legislature has provided that the liability of an employer under the Workmen's Compensation Act shall be exclusive and in place of all other liability of such employer. Section 440.11(1), Florida Statutes (1975). The legislature further provided that there is a right *608 of contribution between joint tort-feasors "when two or more persons become jointly or severally liable in tort for the same injury." Section 768.31(2), Florida Statutes (1975). Because of the statutory exemption created by Section 440.11(1), we find that Blaw-Knox and Frito Lay, did not become "jointly or severally liable in tort for the same injury."
We believe the applicable law is correctly stated in United Gas Pipeline Co. v. Gulf Power Co., 334 So.2d 310 (Fla.1st DCA 1976), and we adopt the view expressed therein that no right of contribution exists in favor of the third party tort-feasor because the workmen's compensation employer and the third person are not under a common liability to the injured person, since the employer's liability is imposed, as well as limited, by the provisions of the Workmen's Compensation Act, while that of the third-person tort-feasor rests on the principles of negligence. See also Annot. 53 A.L.R.2d 977, 987 (1957).
A number of other points have been raised in both appeals. We have considered each of them and find no reversible error.
AFFIRMED.
ANSTEAD and DAUKSCH, JJ., concur.