## Norfolk

### WILLIAM IVAN BYRDSONG

v.

### COMMONWEALTH OF VIRGINIA

No. 0791-85

Decided June 17, 1986

COUNSEL

Michael F. Fasanaro, Jr. (Abrons, McCormack and Fasanaro, on brief), for appellant.

Margaret Poles Spencer, Assistant Attorney General (William G. Broaddus, Attorney General, on brief), for appellee.

OPINION

**BAKER, J.**—In March 1985, William Ivan Byrdsong (appellant) was tried by a jury and convicted of forcible sodomy and aggravated sexual assault of a thirteen year old retarded boy who was a special education student in a class taught by appellant in the Newport News public school system. Appellant appeals from an order of the trial court which approved the verdict and total sentence of sixty-five years imprisonment.

The issue on this appeal is whether the trial court erred in refusing to permit two witnesses, Mary E. Green and Emma L. Howell, to testify before the jury concerning appellant's reputation for truthfulness.

Appellant testified on his own behalf at trial. He intended to call four witnesses to testify that he possessed a reputation for being a truthful man. On the morning of trial and prior to impaneling the jury, the Commonwealth challenged the competency of these four witnesses on the basis that they were not sufficiently aware of appellant's reputation. The trial court conducted a pretrial evidentiary hearing to determine the witnesses' competency to testify as character witnesses.

The hearing resulted in the exclusion of three of the four proffered witnesses, and appellant appeals from the exclusion of two of them, Mary E. Green and Emma L. Howell. He maintains that the exclusions constitute prejudicial error in that they hampered his ability to defend himself. Further, he argues that the Commonwealth exploited and exacerbated the error when the prosecutor commented to the jury on closing argument that following several years of teaching, appellant could produce but one character witness.

## I.

In legal parlance, where reference is made to the *character* of the accused, character is used as a synonym for *reputation*. *Zirkle* v. *Commonwealth*, 189 Va. 862, 871, 55 S.E.2d 24, 29 (1949). Testimony to prove the good or bad character of the defendant in a criminal prosecution must relate and be confined to proof of the opinion that the people of the community have of him. *Id.* at 871, 55 S.E.2d at 29; *see also* 29 Am. Jur. 2d *Evidence* § 344 (1967). "It follows that character . . . must be proven either by hearsay testimony, or negative testimony. Negative evidence of good character is admitted on the theory that his reputation is presumed to be good where 'no slanderer has ever ventured even so much as to question it.' " *Zirkle*, 189 Va. at 871-72, 55 S.E.2d at 29-30.

A person on trial for a criminal offense has the right to introduce evidence of his good character, on the theory that it is improbable that a person who bears a good reputation would be likely to commit the crime charged against him. Evidence of this nature may be considered and weighed by the jury in determining his guilt or innocence, and, in a proper case, the punishment to be imposed.

*Id.* at 871, 55 S.E.2d at 29; *see also* 29 Am. Jur. 2d *Evidence* § 339 (1967). When character evidence relating to the defendant is introduced, it is the province of the jury to determine the weight that it will be given. *Bradley* v. *Commonwealth*, 196 Va. 1126, 1134, 86 S.E.2d 828, 833 (1955). When such evidence is proffered, it should not be refused on the basis of "semantical subtleties." *Barlow* v. *Commonwealth*, 224 Va. 338, 341, 297 S.E.2d 645, 646 (1982).

The introductory question typically asked by the defense attorney to lay the foundation for the presentation of reputation evidence is: "Do you know the defendant's reputation for truth and veracity in the *community* in which he lives?" *See Bradley*, 196 Va. at 1133, 86 S.E.2d at 833. (emphasis added). If the witness answers in the affirmative, follow up questions are propounded. The extent to which the witness may respond is greater than simply the defendant's reputation in his residential area, referred to by one witness in this case as appellant's "home community."

As used in questions dealing with character evidence, the term "community" is not susceptible of exact geographical definition, but means, in a general way, where the defendant is well known and has established a reputation. 29 Am. Jur. 2d *Evidence* § 347 (1967). The place of acquiring reputation is not confined to actual residence. *Brotherhood of Railroad Trainmen* v. *Vickers*, 121 Va. 311, 316, 93 S.E. 577, 578 (1917). Those most likely to be acquainted with the defendant's reputation for truth naturally might be expected to be found among his associates engaged in a common employment. *Id.* at 317, 93 S.E. at 579.

One accused of a crime is not limited solely to reputation evidence regarding truthfulness, but "may offer evidence of his good character for the trait involved in the particular prosecution." *Barlow*, 224 Va. at 340, 297 S.E.2d at 646.

The trial court and counsel examined appellant's prospective character witnesses out of the presence of the jury. At the conclusion of the examinations the court excluded the testimony of Mary E. Green as being "too equivocal" and ruled without stating a reason that Emma L. Howell would not be permitted to testify concerning the appellant's character.

## II.

Mary E. Green, a Newport News public school teacher, testified that she has known appellant for some twelve years as both a professional associate and a friend. After being asked by defense counsel whether she knew his reputation for truth and veracity among the other people with whom she deals on a professional basis, the trial court repeated the question and she replied affirmatively, saying:

His reputation in the professional community is he's a very truthful person, he's very good with children, he's very concerned about what he's doing and he's a very good teacher. He's very kind and he's a very honest man.

On cross examination, in response to questions by the prosecutor and by the trial court, Green appeared to waiver from the quoted response regarding when and with whom she had discussed appellant's character; however, a careful reading of the entire record of her testimony discloses that her responses revealed the required discussions within the appellant's work community and were sufficient to make them admissible before the jury. The record reveals the following examination of Mrs. Green:

Q    But did he specifically discuss whether or not he is known for telling the truth, not whether he's a nice man or whether he's a good teacher, but whether he is known for telling the truth?

A    You mean with the professional people or with the policemen (when interviewed by them)? (clarification added).

Q    THE COURT: With the community in which he resides, what is his reputation for truth and veracity. She's asking you now have you discussed that with anyone.

A    No I have not.

MS. KRINICK:  I think that's the end of the inquiry, Judge.

THE COURT:  I think it is, too.

It can be seen that the witness was misled by the limitation that the trial court suggested concerning the appellant's reputation in the community "in which he resides." Upon reexamination by defense counsel, the following resulted:

MR. FASANARO: The question is have you discussed that with the people with whom you are professionally associated?

A   Yes.

Q   You've discussed with the people you work with his reputation for telling the truth?

A   Yes, I have, but not with the home community I have not.

If the trial court deemed Mrs. Green's testimony to be so "equivocal" as to refuse to admit it for consideration by the jury, then it apparently misunderstood her testimony. Moreover, later in the record, three other members of the appellant's work community were identified as persons with whom discussions of the appellant's reputation for truthfulness had occurred. The following appears in the record:

Q   You mentioned Mrs. Henderson, Mrs. Valentine, Mrs. Howell and so forth. Was there a discussion as to whether or not Mr. Byrdsong is a truthful individual?

A   Yes.

\*   \*   \*

Q   The discussions you had with Mrs. Henderson, Mrs. Valentine, Mrs. Howell, about Mr. Byrdsong, did they encompass his being a truthful individual?

A   Yes.

THE COURT: Tell us what was said.

A   Also with my nephew. He's a student.

THE COURT: Tell us what they said.

A   They were saying Mr. Byrdsong wouldn't be lying, he's not a liar, and my nephew, he's an athelete (sic), he was in the school where Mr. Byrdsong used to teach and he said this since, Mr. Byrdsong is a very truthful person.

\*   \*   \*

THE COURT: She's named some other persons, too, who made those statements.

Q Who else made the statement he was a truthful man?

A Mrs. Valentine and Mrs. Henderson.

At a point when it appeared that some of the questions were confusing the witness, the trial judge observed:

It's a real narrow issue and lawyers tend to talk like lawyers sometimes. The only issue we can talk about is whether he has a reputation in your professional community for telling the truth, not whether he's a good teacher or whether he's a nice man, but for telling the truth and you said he does have that reputation. I'm asking you how you know that and the *only* way you can know that is by having discussed it with other people and I want to know what other people you've discussed it with and when and how it came up? (emphasis supplied).

■ The witness is not so limited. A character witness is allowed to summarize what he has heard or not heard in the community relating to the truthfulness or other relevant traits of an accused, although much of it may have been said by persons less qualified to judge the defendant's character than the witness himself. 29 Am. Jur. 2d *Evidence* § 345 (1967). But the lay witness cannot be expected to respond with the precision of a skilled surgeon. Requirements for the admissibility of character testimony are met if the witness answers in a manner sufficient for a jury to evaluate what the witness has said relevant to the defendant's character. When the accused presents such character evidence the Commonwealth is allowed wide latitude on cross examination to ascertain whether the witness in fact knows the reputation of the accused. *Zirkle*, 189 Va. at 872, 55 S.E.2d at 30. Here the cross examination produced answers from which the Commonwealth could argue against the value of the testimony; however, the jury should have been permitted to hear what Mrs. Green had to say concerning the appellant's reputation.

Moreover, an important negative evidence statement made by the witness was apparently overlooked by the trial judge. On cross examination the prosecution developed the following:

Q    Please listen to my question. When did you discuss with other members of your profession his reputation for telling the truth?

A    Well, of course, it came up after this case came up, *but I can't pinpoint anybody ever having the need to discuss he was telling the truth before this came up.* (emphasis added).

These words constitute evidence which the jury could have weighed as proof that prior to the charges for which he was being tried no one had ever ventured to question the appellant's reputation for truthfulness. *See Zirkle*, 189 Va. at 871-72, 55 S.E.2d at 29-30.

In concluding the examination of Mrs. Green, the trial court advised her that she would have to state "verbatim" what Mrs. Valentine and Mrs. Henderson had said during the discussions of the appellant's truthfulness. It then advised her that: "You just have to know that it was said and that it was discussed and who did it and they were people generally in the community." It should be noted that the court previously had told the witness that the discussions had to be with people in the community in which the appellant *resides*. The final testimonial words spoken by Mrs. Green were: "[W]e were all discussing it at one time or another and this is what the outcome of it was."

## III.

Emma L. Howell, another Newport News teacher, stated that she has known appellant in a professional capacity for over twelve years, during which time they became "very close." She testified that appellant enjoys a good reputation in the professional community and that he is known as a truthful person. She recalled "two or three" conversations with other teachers regarding appellant, all of which took place after the lodging of criminal charges.

On cross examination, she agreed that the conversations involved the participants' opinions that appellant would not commit crimes such as those of which he was charged. The trial court deemed Howell incompetent to testify regarding appellant's reputation.

## IV.

We hold, upon this record, that the trial court's exclusion of the character evidence proffered by appellant from Mary E. Green and Emma L. Howell was an abuse of discretion. *See Williams* v. *Williams*, 192 Va. 787, 793, 66 S.E.2d 500, 504 (1951). Each witness testified that she knew appellant well for an extended time period within a specific professional community. Each witness participated in and overheard discussions in which fellow teachers formed a consensus regarding appellant's reputation as a truthful individual. Furthermore, both were denied an opportunity to express to the jury any negative evidence of appellant's good character. Extensive cross examination did not alter the fact that these witnesses were competent to give character testimony before the jury in this case.

The failure of the trial court to permit Mrs. Green and Mrs. Howell to testify was not harmless error. In closing argument the Commonwealth argued that "out of 11 years in the Newport News school system he can bring you in one person to testify as to his reputation for being truthful." We agree with appellant's contention that the prejudice flowing from the trial court's ruling was exacerbated by the Commonwealth's closing argument.

We conclude that the trial court committed reversible error in excluding character evidence proffered by the appellant. Thus, we reverse both convictions and remand the case to the trial court for a new trial consistent with the views herein expressed.

*Reversed and remanded.*

Barrow, J., and Hodges, J., concurred.