PRESENT: All the Justices

MICHAEL ARMIN GARDNER

OPINION BY

v.  Record No. 131166          JUSTICE S. BERNARD GOODWYN
                               June 5, 2014

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether the Court of Appeals erred in affirming the circuit court's exclusion of evidence of good character sought by the defendant.

Procedural and Factual Background[1]

In the Circuit Court of Arlington County, Michael Armin Gardner (Gardner) was charged with three counts of aggravated sexual battery in violation of Code § 18.2-67.3 and one count of object sexual penetration in violation of Code § 18.2-67.2. The charges arise from events alleged to have taken place during sleepovers at his home on June 16 and June 18, 2011, and involve pre-teen girls who were friends of his daughter. After a jury trial, Gardner was found guilty of two counts of aggravated sexual battery and one count of object sexual penetration.[2]

---

[1] We will address only those facts and procedures relevant to the dispositive issue.

[2] The circuit court declared a mistrial on one count of aggravated sexual battery after the jury was unable to reach a unanimous verdict on that charge. That charge is not presently at issue in this appeal.

Gardner appealed his convictions to the Court of Appeals, which denied his petition for appeal. <u>Gardner v. Commonwealth</u>, Record No. 1831-12-4 (June 21, 2013). This Court granted Gardner's petition for appeal. The dispositive issue for purposes of this appeal is whether the Court of Appeals erred in affirming the judgment of conviction despite the circuit court's refusal to permit Gardner to elicit evidence of his good character through two witnesses.[3]

While presenting its case at trial, the defense called six character witnesses. In addition to presenting evidence of Gardner's character for truth and veracity, Gardner also attempted to question two of those character witnesses, Laurie Ombrembt (Ombrembt) and Katherine Allan (Allan), about his reputation in the community for being a good caretaker of children and for not being sexually assaultive or abusive toward them.

Specifically, Gardner's counsel asked Ombrembt, "Do you know if Mr. — what Mr. Gardner's reputation is, among those who know him as well, for being someone who would be a good caretaker of children as opposed to someone who would harm or abuse or be neglectful of them?" The Commonwealth objected

---

[3] Although Gardner asserts additional assignments of error, we need not address them because this assignment of error is dispositive. <u>See, e.g.</u>, <u>Board of Supervisors v. Davenport & Co.</u>, 285 Va. 580, 591-92, 742 S.E.2d 59, 64 (2013).

and argued that Gardner was limited to presenting character evidence relating to "a reputation for truthfulness and veracity or for peacefulness." In response, Gardner argued to the circuit court that he was entitled to present evidence regarding his reputation for possessing traits related to the crimes charged and that reputation evidence could be in the form of negative testimony regarding his not having a reputation for possessing a certain trait.

The Commonwealth then argued that

> it is the defendant's reputation at the time of the incident which is at issue here, so if the neighbors had a discussion that he's never known to be a pedophile, that would be one thing if they had a discussion in the neighborhood about that, but I doubt that they did until after the incident and I don't think he can prove that up through this witness or any other.

Immediately thereafter, the circuit court stated, "I agree," and sustained the Commonwealth's objection to the character evidence sought by Gardner.

Gardner then proffered the following:

> Your Honor, we would proffer, then, that Ms. Ombrembt . . . would testify that - beyond what she's already testified to - that there is no evidence of a negative sort that Mr. Gardner has been involved in any sort of abusive, physical, sexual, neglectful behavior with children.

> That that is current and that that is including the time period of mid-June of 2011 and the time frame leading up to that; that she has knowledge of that, of people's involvement with Mr. Gardner; that they have expressed that they allow and would allow

3

[their] kids to be with him, to be supervised with him; and that they have no evidence, no indication, of any sort of bad conduct, sexual conduct, with minor children during that time. . . . And she's never heard any of that.

Gardner called Allan as his next witness. After establishing her knowledge of Gardner's reputation in the community and questioning Allan about Gardner's reputation for truth and veracity, Gardner, without objection, asked the circuit court to incorporate his earlier questions to Ombrembt and proffer as part of Allan's testimony.

In its order denying Gardner's appeal and affirming the circuit court's ruling regarding the Commonwealth's objection to Gardner's character evidence inquiry, the Court of Appeals stated that there was no evidence that the witnesses had discussed the characteristic of being a good caretaker of children and not being abusive or assaultive toward them prior to Gardner's being charged with the offenses. The court noted that the proffered testimony of the reputation witnesses focused on the suggestion that Gardner had not been involved previously in any sort of abusive, physical, sexual or neglectful behavior with children and that these witnesses knew individuals who would allow Gardner to supervise their children. The Court of Appeals then concluded that the circuit court did not preclude testimony as to the general reputation evidence that existed regarding Gardner prior to

4

his being charged with the offenses and affirmed the judgment of the circuit court.  Considering the Commonwealth's objections and Gardner's proffer in the context in which they were presented at trial, we conclude that this ruling of the Court of Appeals was erroneous.

## Analysis

Gardner claims that the circuit court misapplied the law by ruling that truth and veracity were the only admissible traits or, alternatively, that the reputational evidence sought was not within a relevant time period.  Gardner claims the Court of Appeals erred in not reversing the convictions and by ruling that the circuit court did not preclude testimony as to Gardner's general reputation prior to his being charged with the offenses.

By asking Ombrembt and Allan to testify about their personal knowledge of his "reputation in the community for a character trait at issue in the case," Gardner maintains he laid the proper foundation for admission of the additional character testimony he sought from them.  He claims his proffer addressed the Commonwealth's claim that the character testimony he sought did not relate to his reputation prior to being charged with the offenses.  Gardner proffered that the reputation evidence he sought from the witnesses included "the time period of mid-June of 2011 and the time frame leading up

5

to it."  According to Gardner, the proffer also provided additional foundational information to support the reputational evidence he wanted admitted.

The Commonwealth acknowledges Gardner's proffer "reference[d] the relevant time period."  However, it argues that "though [Gardner] asserted Ombrembt and Allan were aware of the assessment of Gardner by particular individuals as it related to their children, [he] failed to place this proffer into the larger context of community opinion."  The Commonwealth disagrees that Gardner's proffer was merely laying a foundation.  According to the Commonwealth, Gardner's proffer focused on Ombrembt's and Allan's own personal knowledge, which is impermissible as character evidence.

A trial court exercises its sound discretion when it decides whether to admit character evidence in the form of witness testimony in a criminal trial.  See Zirkle v. Commonwealth, 189 Va. 862, 872, 55 S.E.2d 24, 30 (1949).  However, although a trial court exercises its discretion in admitting or excluding evidence, the court may not exercise its discretion to exclude admissible evidence.  See Gray v. Rhoads, 268 Va. 81, 86, 597 S.E.2d 93, 96 (2004).  This is because admissibility of evidence is determined by legal principles.  Id.

At trial, the Commonwealth objected, on two grounds, to Gardner's question that sought the disputed character evidence. It first objected to the question because the Commonwealth believed Gardner was limited to character evidence concerning reputation for truthfulness, veracity or peacefulness. Secondly, the Commonwealth claimed that the question sought inadmissible reputation evidence because the evidence did not exclusively concern Gardner's reputation before the incident. As a matter of law, neither ground was a proper basis for sustaining the Commonwealth's objection to Gardner's question that sought the proposed character evidence.

We have repeatedly stated that a defendant is not limited solely to reputation evidence regarding truthfulness, but may offer evidence to prove good character for any trait relevant in the case. See Barlow v. Commonwealth, 224 Va. 338, 340, 297 S.E.2d 645, 646 (1982); Zirkle, 189 Va. at 871, 55 S.E.2d at 29; see also Va. R. Evid. 2:404(a)(1) (permitting character evidence in the form of "[e]vidence of a pertinent character trait of the accused offered by the accused"). Character is used as a synonym for reputation. Zirkle, 189 Va. at 871, 55 S.E.2d at 29. "A person on trial for a criminal offense has the right to introduce evidence of his good character, on the theory that it is improbable that a person who bears a good

7

reputation would be likely to commit the crime charged against him."  Id.  For this reason, the circuit court erred as a matter of law to the extent it sustained the Commonwealth's objection and excluded Gardner's character evidence based upon the Commonwealth's stated objection that character evidence is limited to a defendant's character for truth and veracity or for peacefulness.

Likewise, case law does not support the Commonwealth's argument at trial, accepted by the circuit court and affirmed by the Court of Appeals, that Gardner's character evidence was restricted to his reputation before being criminally charged. The Commonwealth cites no Virginia case that supports excluding evidence offered to bolster a defendant's character on that basis.  Prior decisions of this Court and of the Court of Appeals demonstrate that reference to post-offense conduct or conversations in cross-examining a defense character witness may be restricted in the discretion of the trial court, but none of these cases asks the impossible:  that a defense character witness not testify to the defendant's reputation at the time of trial but reconstruct what that reputation was prior to the offense.  See Ginger v. Commonwealth, 137 Va. 811, 814-15, 120 S.E. 151, 152 (1923) (prosecution rebuttal character witness could not testify without knowledge of the general reputation of the defendant

8

before or after the offense); Mohler v. Commonwealth, 132 Va. 713, 735-36, 111 S.E. 454, 461-62 (1922) (in rebutting defense character evidence, prosecution cannot offer proof of a reputation adversely affected by the pendency of the present prosecution); Carter v. Commonwealth, 4 Va. (2 Va. Cas.) 169, 169-70 (1819) (witness without knowledge of the defendant's character could not recount conversation with third party held after the pending charges were brought); Gravely v. Commonwealth, 13 Va. App. 560, 564, 414 S.E.2d 190, 192 (1992) (on cross-examination of defense character witness Commonwealth may not question about unrelated offenses occurring after the date of the events giving rise to the pending charges).

Generally, "in a criminal prosecution [if the prosecution is allowed to offer evidence of the defendant's bad character for a particular trait] the evidence must be limited to [the defendant's] general reputation ante litem motam," i.e., before the defendant was accused of the crime or the trial began. Brotherhood of Railroad Trainmen v. Vickers, 121 Va. 311, 314, 93 S.E. 577, 578 (1917). The purpose of this evidence rule is to prevent admission of untrustworthy adverse reputation character evidence engendered by the very fact of the pending charges from unfairly influencing the jury's

verdict.[4]  See Ginger, 137 Va. at 815, 120 S.E. at 152

("[U]nfounded suspicions engendered by the accusation may

serve to color the reputation and render it untrustworthy")

(internal quotation marks and citation omitted).[5]

The rationale for the restriction on adverse character

proof does not apply when a defendant offers evidence of his

good reputation.  Any character witness who is prepared to

testify as to the defendant's good reputation after the

defendant has been accused of a crime has certainly not formed

"unfounded suspicions engendered by the accusation."  Id.

Additionally, the Commonwealth argues that the Court of

Appeals did not err in affirming the convictions because the

circuit court correctly ruled that Gardner had to provide

evidence that the witnesses had discussed the relevant

characteristics prior to Gardner's being charged for their

testimony to be admissible.  However, the Court of Appeals has

previously ruled otherwise.  In Byrdsong v. Commonwealth,

---

[4] See generally 5 Wigmore, Evidence § 1618, at 492–93 (3d ed. 1940) (collecting cases).

[5] See generally Christopher Mueller & Laird Kirkpatrick, Evidence § 419 (3d ed. 2003) (citing case law for the proposition that a defendant's "reputation in the community after the charge became publicized might not be a trustworthy index to his actual character"); Roger Park, et al., Evidence Law § 5.07 & n.80 (3d ed. 2011) (citing cases where the prosecution's attempt to rebut defendant's character proof with reputation affected by the existence of the pending charges was disallowed).

2 Va. App. 400, 407, 345 S.E.2d 528, 532 (1986), the character witness frankly admitted that "[the defendant's reputation] came up after this case came up, but I can't pinpoint anybody ever having the need to discuss [whether] he was telling the truth before this came up."[6] (Emphasis in original.) The Court of Appeals correctly held in Byrdsong that the trial court should have allowed the jury to hear the witness's testimony. Id. at 406, 345 S.E.2d at 532. To the extent the circuit court sustained the Commonwealth's objection because Gardner failed to show his character witnesses had discussed his reputation prior to the incident, or because their testimony might have included evidence of Gardner's reputation as of the day of trial, the circuit court erred.

Although the circuit court erred in sustaining the objection to Gardner's character evidence questions, we must

---

[6] Our law permits character evidence based on what the witness has heard about the defendant and what the witness has "not heard in the community," which makes any requirement of prior discussion by the witness obviously inapplicable. See Jackson v. Commonwealth, 266 Va. 423, 440, 587 S.E.2d 532, 544 (2003); Zirkle, 189 Va. at 871-72, 55 S.E.2d at 29-30; Byrdsong, 2 Va. App. at 406, 345 S.E.2d at 531. Generally, there is no requirement that the defense character witness have engaged in prior discussions of defendant's character for the traits at issue. See also Michelson v. United States, 335 U.S. 469, 478 (1948) (approving testimony that the witness had heard nothing ill of the defendant). See generally, e.g., Kenneth Broun, et al., McCormick on Evidence, § 43 (6th ed. 2006) (describing requirements for a character witness's knowledge of the defendant's reputation with no mention of a prior discussion requirement).

11

consider the proffer to determine whether the circuit court's error prejudiced Gardner. See Commonwealth Transp. Comm'r v. Target Corp., 274 Va. 341, 348, 650 S.E.2d 92, 96 (2007) (holding that without a proper proffer, this Court was unable to determine whether the trial court's ruling on admissibility of the evidence prejudiced the appellant). "Error may . . . be predicated upon . . . exclusion of evidence [if] the substance of the evidence was made known to the court by proffer." Va. R. Evid. 2:103(a)(2). Counsel is required to proffer the substance of the anticipated testimony. Whittaker v. Commonwealth, 217 Va. 966, 968-69, 234 S.E.2d 79, 81 (1977); Scott v. Commonwealth, 191 Va. 73, 78-79, 60 S.E.2d 14, 16 (1950); Owens v. Commonwealth, 147 Va. 624, 630-31, 136 S.E. 765, 767 (1927); Union Central Life Ins. Co. v. Pollard, 94 Va. 146, 156-57, 26 S.E. 421, 423-24 (1896).

A criminal defendant may prove his good reputation for a particular character trait by presenting "[n]egative evidence of good character." Zirkle, 189 Va. at 871, 55 S.E.2d at 29. "Negative evidence of good character is based on the theory that a person has a good reputation if that reputation has not been questioned." Jackson v. Commonwealth, 266 Va. 423, 439, 587 S.E.2d 532, 544 (2003). "A witness may testify that he or she has never heard that the accused has the reputation of possessing a certain trait." Chiles v. Commonwealth, 12 Va.

12

App. 698, 700, 406 S.E.2d 413, 415 (1991). We conclude that Gardner's proffer was sufficient to demonstrate the substance of the evidence of Gardner's character that would have been provided, if the circuit court had not erroneously sustained an objection to Gardner's inquiry concerning his character, and it would have been favorable to Gardner.

A jury may consider character evidence in determining a criminal defendant's guilt and punishment. Zirkle, 189 Va. at 871, 55 S.E.2d at 29. Considering the evidence presented at trial and the fact that the jury could not reach a unanimous verdict on one count of aggravated sexual battery, we cannot say with fair assurance that the circuit court's exclusion of Ombrembt's and Allan's character testimony did not "substantially sway[]" the jury's determination of Gardner's guilt. See Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001) ("[I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. . . . If so, or if one is left in grave doubt, the conviction cannot stand.") (quoting Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)). Thus, we cannot say that the circuit court's sustaining of the Commonwealth's objection resulting in the

13

exclusion of Gardner's character evidence was harmless error. See Barlow, 224 Va. at 342, 297 S.E.2d at 647 (holding that the exclusion of defendant's character evidence of nonviolence was not harmless error, despite defendant's opportunity to present evidence of his reputation for being "honest and hard-working"); see also Michelson v. United States, 335 U.S. 469, 476 (1948) (recognizing "[the] privilege [of presenting character evidence] is sometimes valuable to a defendant [because] such testimony alone, in some circumstances, may be enough to raise a reasonable doubt of guilt").

## Conclusion

We hold that the Court of Appeals erred in denying Gardner's appeal, because the circuit court erred by sustaining the Commonwealth's objection to Gardner's question that sought admissible character evidence. Furthermore, we cannot say that such error was harmless. Therefore, we will reverse the judgment of the Court of Appeals, vacate the convictions, and remand this case to the Court of Appeals directing that it remand the case to the circuit court for further proceedings if the Commonwealth be so inclined.

Reversed and remanded.

JUSTICE LEMONS, concurring.

I join the majority opinion in its entirety and write this concurrence to emphasize one additional matter which will be relevant upon remand – the joinder of the separate offenses under Rule 3A:10(c).

Gardner assigns error to the Court of Appeals' judgment affirming the trial court's joinder of charges against him arising from allegations of criminal conduct occurring on June 16 and June 18, 2011. Because this case will be reversed and remanded and Gardner's convictions will be vacated, it is unnecessary for this Court to address whether the trial court erred by joining the separate offenses for trial. However, if the Commonwealth proceeds with prosecution following remand, it will have the burden of moving for joinder again and the defendant will have the opportunity to oppose the motion.

As a general rule, evidence of propensity to commit a crime is inadmissible. Va. R. Evid. 2:404(b) ("Evidence of other crimes, wrongs, or acts is generally not admissible to prove the character trait of a person in order to show that the person acted in conformity therewith."). However, under Rule 3A:10(c), a trial court may order the defendant to be tried in a single trial for more than one offense if "justice does not require separate trials and (i) the offenses meet the requirements of Rule 3A:6(b) or (ii) the accused and the

15

Commonwealth's attorney consent thereto."  Scott v. Commonwealth, 274 Va. 636, 644, 651 S.E.2d 630, 634 (2007). See also Commonwealth v. Smith, 263 Va. 13, 16, 557 S.E.2d 223, 225 (2002); Satcher v. Commonwealth, 244 Va. 220, 229, 421 S.E.2d 821, 827 (1992); Cheng v. Commonwealth, 240 Va. 26, 33, 393 S.E.2d 599, 603 (1990).  Under Rule 3A:6(b), two or more offenses may be joined "if the offenses are based on the same act or transaction, or on two or more acts or transactions that are connected or constitute parts of a common scheme or plan."

Upon remand, if the Commonwealth seeks joinder again, the trial court must carefully reconsider the standards we have articulated for joinder of separate offenses.


JUSTICE McCLANAHAN, dissenting.

I disagree with the majority's conclusion that the circuit court abused its discretion in excluding Gardner's proffered character testimony of Laurie Ombrembt and Katherine Allan. Furthermore, for the reasons stated by the Court of Appeals in denying Gardner's petition for appeal, I do not believe the circuit court abused its discretion in reaching its other rulings challenged in this appeal.  I would thus affirm the judgment of the circuit court.

16

Following Ombrembt's testimony regarding Gardner's reputation for truthfulness, his counsel asked Ombrembt about Gardner's reputation for being "a good caretaker of children." The circuit court sustained the Commonwealth's objection to the question on the ground that no foundation had been established for whether such reputation was for the period before or after Gardner's alleged crimes, as the latter would be inadmissible. Gardner's counsel then proffered Ombrembt's testimony in response to this question regarding Gardner's reputation for being a good caretaker of children, which clarified that the response would cover the period leading up to Gardner's alleged crimes. Gardner's counsel subsequently offered this proffer as Allan's answer to the same question regarding Gardner's reputation for child care.

By proffering this testimony, Gardner preserved the right to challenge its exclusion on appeal, and the proffer is now before us for review. See Va. R. Evid. 2:103(a)(2); Holles v. Sunrise Terrace, Inc., 257 Va. 131, 135, 509 S.E.2d 494, 497 (1999); Owens v. Commonwealth, 147 Va. 624, 630, 136 S.E. 765, 767 (1927). The proffered testimony contained no statement that either Ombrembt or Allan was aware of Gardner's reputation in the community for a trait regarding child care, which was a threshold requirement for its admission under well-settled principles. I would, therefore, hold that the proffer was

17

legally deficient for reputation evidence – despite the clarification regarding the timing issue.

A character witness in a criminal case "must be aware of the [accused's] reputation in the community before [she] may testify [regarding the accused's] reputation for a particular characteristic."  Jackson v. Commonwealth, 266 Va. 423, 440, 587 S.E.2d 532, 544 (2003).  As a corollary, the testimony is confined to "the opinion that the people of the community have of [the accused]."  Zirkle v. Commonwealth, 189 Va. 862, 871, 55 S.E.2d 24, 29 (1949).  The long-established rationale for this common law rule of evidence, which presents a significant exception to the hearsay rule, is as follows: "reputation is the aggregate voice of a community, offered to prove its corporate or collective opinion, as the basis for inferences that the person is a particular sort of person, hence that he probably behaved a certain way.  It is the very fact that the witness reports the voice of the community that is thought to be the great strength of such proof."  Christopher B. Mueller & Laird C. Kirkpatrick, 2 Federal Evidence § 4:42 (4th ed. 2013) (citing Badger v. Badger, 88 N.Y. 546, 552 (N.Y. 1882)and Michelson v. United States, 335 U.S. 469, 477 (1948)).

"Reputation," in short, "is not what a few persons say or may think about the accused, it is what the community generally believes."  Moore v. United States, 123 F.2d 207, 210 (5th Cir.

18

1941) (citations omitted).  In laying a foundation for the admission of reputation evidence, the proponent must therefore "establish[] that the community from which the reputation testimony is drawn is sufficiently broad to provide the witness with adequate knowledge to give a reliable assessment." Morrison v. State, 818 So.2d 432, 449 (Fla. 2002) (citation omitted); see State v. Denny, 240 S.E.2d 437, 439 (N.C. 1978) ("[D]efendant's character is proved by testimony concerning his general reputation, held by an appreciable group of people who have had adequate basis upon which to form their opinion." (emphasis in original) (citation and internal quotation marks omitted)); Commonwealth v. La Pierre, 408 N.E.2d 883, 883-84 (Mass. App. Ct. 1980) (explaining that "the trial judge has discretion to exclude [reputation] evidence if he determines that it is based on the opinions of too limited a group," because "[i]t is only where the sources are sufficiently numerous and general that they are viewed as trustworthy" (citation omitted)).  Thus, for example, in State v. Tucker, 968 A.2d 543, 548-49 (Me. 2009), the Supreme Judicial Court of Maine held that reputation testimony was properly excluded because it was based on reports from only eight people in a single apartment community.

Here, the proffered testimony contained an ambiguous reference to Ombrembt's "knowledge of . . . people's involvement

with Mr. Gardner," followed by the statement that "they have expressed that they allow and [she] would allow her kids to be with him, [and] be supervised with him."  (Emphasis added.) Ombrembt would then purportedly state that "they have no evidence, no indication, of any sort of bad conduct, sexual conduct, with minor children."  (Id.)  Ombrembt's reference to "people" involved with Gardner, who purportedly expressed an opinion about him, could have been any number of individuals (even as few as two) having any number of disparate connections to him.  There was simply no proffer that Ombrembt knew of Gardner's reputation for child care from the collective judgment of any particular community of appreciable size and definition such as to make the community judgment probative, as required for the admission of reputation evidence.[1]

Even if we assume by the reference to "people" that Ombrembt was referring to the same individuals upon whom she

---

[1] The proffer, of course, cannot reasonably be read in the alternative as presenting Ombrembt's knowledge of Gardner's reputation among everyone with whom he was involved in all of his various social, commercial and professional activities and associations, which would be incredible on its face.  See Nobrega v. Commonwealth, 271 Va. 508, 518, 628 S.E.2d 922, 927 (2006) (the trial court may reject, as a matter of law, testimony determined to be "'inherently incredible'" (quoting Walker v. Commonwealth, 258 Va. 54, 70-71, 515 S.E.2d 565, 575 (1999)); Barker v. Commonwealth, 230 Va. 370, 374, 337 S.E.2d 729, 732 (1985) ("'[W]e are not required to believe that which we know to be inherently incredible or contrary to human experience.'" (quoting Willis v. Commonwealth, 218 Va. 560, 564, 238 S.E.2d 811, 813 (1977)).

20

based her testimony regarding Gardner's reputation for truthfulness, the proffer would still be deficient. There, Ombrembt simply identified two certain couples who lived nearby, and then made reference to "the neighbors around that [she] know[s] well" - whoever that might have been in addition to the two named couples, if she was in fact referring to anyone else. The opinion of a character witness's select group of individuals with whom she is best acquainted does not represent the collective judgment of a cognizable community for purposes of presenting reputation evidence.[2] See <u>Ginger v. Commonwealth</u>, 137 Va. 811, 814, 816, 120 S.E. 151, 152, 153 (1923) (reputation testimony about a person's dangerousness was "clearly inadmissible" when based on conversation with two law enforcement officers rather than "<u>general</u> reputation" (emphasis in original)).

After hearing the proffered testimony and the argument of counsel about whether it constituted admissible reputation evidence, the circuit court did not change its ruling to exclude it. For the reasons stated above, I would hold that the circuit court did not abuse its discretion in finding an insufficient basis for the admission of the purported reputation evidence, as it was deficient as a matter of law in failing to identify a

---

[2] Allen also testified about Gardner's purported reputation for truthfulness, but, like Ombrembt, Allen failed to identify a cognizable community from which to report that particular trait.

cognizable community.  Therefore, I would affirm Gardner's convictions.