Present:   Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and
           Agee, JJ., and Lacy, S.J.[1]

COMMONWEALTH TRANSPORTATION
COMMISSIONER OF VIRGINIA
                   OPINION BY CHIEF JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 061737            September 14, 2007

TARGET CORPORATION, A/K/A
TARGET STORES, INC.

            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                 Robert W. Wooldridge, Jr., Judge

                              I.

     In this appeal of a judgment in favor of a landowner in a

condemnation proceeding, we consider issues related to the

recovery of damages for the loss of visibility to the residue

of the real property.

                              II.

     The Commonwealth Transportation Commissioner of Virginia

filed a petition for condemnation pursuant to Code § 25.1-205

against Target Stores, Inc.  As authorized by Code §§ 33.1-89,

et seq., the Transportation Commissioner recorded a

certificate of deposit among the land records in Fairfax

County, where the subject property is located.  Upon

recordation, title to certain land that had been owned by

Target's predecessors in title vested in the Commonwealth.

---

     [1] Justice Lacy participated in the hearing and decision of
this case prior to the effective date of her retirement on
August 16, 2007.

The real property interests subject to the take included land in fee simple, permanent easements, and temporary easements. These real property interests were taken for the construction, reconstruction, alteration, maintenance, and repair of Roberts Parkway, which is a part of Route 6197 in Fairfax County.

Target filed its answer to the petition, and a jury trial was conducted in the circuit court. The jury returned a report that awarded Target $175,100 for the value of the real property interests and $3,324,900 for damages to the residue. The Transportation Commissioner filed exceptions to the report. The circuit court rejected the exceptions and entered an order confirming the report. The Transportation Commissioner appeals.

III.

In accordance with familiar principles, we will state the evidence in the light most favorable to Target, the prevailing party in the circuit court. Hoffman Family, L.L.C. v. City of Alexandria, 272 Va. 274, 278, 634 S.E.2d 722, 724 (2006); Stanley v. Webber, 260 Va. 90, 92, 531 S.E.2d 311, 312 (2000); Bayliner Marine Corp. v. Crow, 257 Va. 121, 126, 509 S.E.2d 499, 502 (1999).

Target owns and operates a "big box" retail store on a triangular-shaped parcel in Fairfax County. Before February 5, 1999, the date of the take, Target's parcel consisted of

approximately 10.56 acres.  The front of the store was situated on New Guinea Road, a public street from which signage for the store was visible.  Old Guinea Road extended along the rear of the store, and this road also provided access to the store.

In 1983, Target's predecessor in title made a proffer to Fairfax County, and the proffer affected future development of the parcel that is the subject of this condemnation proceeding.  The proffer, which became a part of the zoning classification for the parcel, included a site plan.  The proffer required dense landscaping on certain portions of the property that reduced the visibility of the store.  The 1983 site plan also showed the future construction of Roberts Road Bridge.  Additionally, information that had been submitted in conjunction with the 1983 proffer revealed that the majority of Old Guinea Road would be vacated in the future.

Before February 1999, Target's retail store was visible from Old Guinea Road and New Guinea Road.  Witnesses described the visibility of the store from New Guinea Road as excellent.  According to one of Target's expert witnesses, the highest and best use of Target's parcel before the take was for the location of a "big box" retail store.  A "big box" retail store is a retail establishment that sells goods to the public

3

at discount prices in a large building, similar to a warehouse, with few amenities.

In August 1999, the Transportation Commissioner commenced construction of Roberts Parkway, which consists of four lanes and a bridge. In March 2002, Roberts Parkway opened.

The Transportation Commissioner closed most of Old Guinea Road to traffic, but a small portion of that public road remains open for vehicular access to Target's store. New Guinea Road extends beside the store. Even though Roberts Parkway is adjacent to the store, visibility of the store from the Parkway is obscured because of privacy barriers that were erected.

The Transportation Commissioner agreed at trial that after the take, the store was not visible from Roberts Parkway. However, the Transportation Commissioner's expert witness testified that Target did not incur any damage to the residue because of this loss of visibility to its store.

Target presented numerous witnesses who testified that after the take, the residue to its property was damaged because the store lost visibility upon the partial closure of Old Guinea Road and upon the construction of privacy barriers along Roberts Parkway. For example, Dexter Williams, who qualified as an expert witness, gave the following testimony:

4

"Q: Describe for me what [has] been lost from this site.

"A: [The store] was . . . at the corner of two roads with visibility from two sides; now it is . . . at the corner of two roads with visibility from one side."

Target's expert witnesses rendered opinions on the damage to the residue caused by the lack of visibility. Richard Marchitelli testified that the damages associated with the permanent taking were $115,000, and the damage to the residue caused by loss of visibility was $4.6 million. Everett B. Wright, another expert witness, testified that the damages to the property that was taken were $173,000 and that the damage to the residue caused by the loss of visibility was approximately $3.3 million. Additionally, the jury commissioners took a view of the property.

IV.

Code § 25.1-417(A)(3) states:

"Before initiating negotiations for real property, the state agency shall establish an amount which it believes to be just compensation therefor and shall make a prompt offer to acquire the property for the full amount so established. In no event shall such amount be less than the agency's approved appraisal of the fair market value of such property, if such an appraisal is required. Any decrease or increase in the fair market value of real property prior to the date of valuation caused by the public improvement for which such property is acquired, or by the likelihood that the property would be acquired for such improvement, other than that due to physical deterioration within the reasonable control of the owner, shall be disregarded in determining the compensation for the

5

property.  The agency concerned shall provide the owner of real property to be acquired with a written statement of, and summary of the basis for, the amount it established as just compensation, together with a copy of the agency's approved appraisal of the fair market value of such property upon which the agency has based the amount offered for the property, if such an appraisal is required.  Where appropriate, the just compensation for the real property acquired and for damages to remaining real property shall be separately stated."

(Emphasis added).

Relying upon this Code section, Target filed a pretrial motion in limine asserting that Code § 25.1-417, "specifically makes it clear that a property owner cannot get enhancement as a result of the project, nor can a property owner be penalized [because of] a decrease in the value of the property as a result of the announcement of a project or the impending nature of a project."  The circuit court ruled that during the trial, the litigants may not "seek admission or elicit evidence of any party's knowledge of the design or construction of the Roberts Parkway Bridge prior to the taking, or any expectancy therefrom," and that "either party may seek admission or elicit evidence of the 1983 Proffer Statement, the approved Target Site Plan and other zoning for the Target site as of the date of the taking."  Subsequently, the judge who presided during the trial interpreted the pretrial ruling as requiring that all references to the future construction of Roberts Parkway or the closing of Old Guinea

6

Road must be redacted from documents related to the zoning proffer and related site plans admitted in evidence at trial.[2]

The Transportation Commissioner argues that even though Code § 25.1-417 prescribes the methodology that the Department of Transportation must utilize to establish fair market value, the circuit court's ruling, prohibiting the Transportation Commissioner from presenting evidence that Target knew of the design and construction of the Roberts Parkway before Target acquired the real property, is contrary to Code § 25.1-417(A)(3). Continuing, the Transportation Commissioner states that the redacted references on exhibits in the landowner's proffer would have shown the jury that Fairfax County's zoning classification required that the Target store not be visible from Roberts Parkway, and that the closure of Old Guinea Road was required by the zoning ordinance.

This Court cannot consider the Transportation Commissioner's arguments. The Transportation Commissioner failed to make all the documents that he claims should not have contained redactions a part of the record.[3] This Court

_____

[2] A different judge presided during the hearing for the motion in limine.

[3] The Transportation Commissioner identified specific documents that contained references he maintains should not have been redacted. Duplicate copies of some of the documents at issue were admitted in evidence and some, but not all, of the documents were inadvertently provided to the jury without redaction. Receipt of these unredacted documents does not

7

has consistently adhered to the following principles that are applicable here:

> "This Court will not consider testimony excluded by the trial court 'without a proper showing of what that testimony might have been.' O'Dell v. Commonwealth, 234 Va. 672, 697, 364 S.E.2d 491, 505 (1988). 'When testimony is rejected before it is delivered, an appellate court has no basis for adjudication unless the record reflects a proper proffer.' Whittaker v. Commonwealth, 217 Va. 966, 968, 234 S.E.2d 79, 81 (1977)."

Rose v. Jaques, 268 Va. 137, 154, 597 S.E.2d 64, 74 (2004); accord Holles, Inc. v. Sunrise Terrace, 257 Va. 131, 135, 509 S.E.2d 494, 497 (1999) ("When testimony is excluded before it is presented, the record must reflect a proper proffer showing what the testimony would have been."); Chappell v. Virginia Electric and Power Co., 250 Va. 169, 173, 458 S.E.2d 282, 285 (1995); Wyche v. Commonwealth, 218 Va. 839, 842, 241 S.E.2d 772, 774 (1978); Jackson v. Commonwealth, 98 Va. 845, 846-47, 36 S.E. 487, 488 (1900). The Transportation Commissioner's failure to make a proffer of all the documents without the redactions has deprived this Court of the ability to determine the admissibility of those documents and, if admissible, whether the circuit court's exclusion of that evidence prejudiced the Transportation Commissioner. Holles, 257 Va.

---

render the redaction ruling of the circuit court harmless error as Target argues, because not all the documents identified by the Transportation Commissioner were provided to the jury in unredacted form.

8

at 135, 509 S.E.2d at 497. A circuit court's judgment is presumptively correct, and the appellant bears the burden of presenting a sufficient record to permit a determination whether the circuit court committed an alleged error. Commonwealth v. Williams, 262 Va. 661, 669, 553 S.E.2d 760, 764 (2001); accord McDonald v. National Enterprises, Inc., 262 Va. 184, 195, 547 S.E.2d 204, 211 (2001); White v. Morano, 249 Va. 27, 30, 452 S.E.2d 856, 858 (1995).

V.

The Transportation Commissioner submitted the following proposed jury instructions, which were refused by the circuit court:

> "Jury Instruction 20
> "One who owns land abutting a public highway is entitled only to reasonable visibility of his property. His right of visibility is limited by the state's right to control traffic over its highways.
> "If you find that the landowner in this case will have reasonable visibility of his property after the construction of this project, then you may not award damages for the change of visibility."

> "Jury Instruction 21
> "The highway constructed upon the land here being condemned is on a new location, no part of which was included in an existing public road which abutted upon the lands of the owner in this proceeding. Therefore, in determining the damages, if any, to the remaining lands of the owner, you will not consider that said remaining land had any right or easement of access or visibility taken from it or the owner, for the reason that there was no such right of easement or access or visibility by the owner or appurtenant to the land described in

9

the petition at the time of the taking by the Commonwealth Transportation Commissioner."

The Transportation Commissioner argues that the circuit court erred by denying proposed Jury Instructions 20 and 21 because a landowner's loss of visibility is not a compensable damage in a condemnation proceeding.

We will not consider the Transportation Commissioner's arguments because the Transportation Commissioner has adopted inconsistent positions. In the circuit court, as illustrated by the Transportation Commissioner's proposed Jury Instruction 20, the Transportation Commissioner asserted that a landowner who owns land abutting a public highway is entitled to damages if a governmental taking has deprived that landowner of reasonable visibility of his property. In this Court, however, the Transportation Commissioner asserts that compensation for "loss of visibility would be directly at odds to the established principle in Virginia that the State has the right to control the flow of traffic under its police power."

We have consistently held that litigants may not take inconsistent positions at different stages of litigation. Cohn v. Knowledge Connections, Inc., 266 Va. 362, 367, 585 S.E.2d 578, 581 (2003); Commonwealth v. Lotz Realty Co., 237 Va. 1, 7, 376 S.E.2d 54, 57 (1989); Sullivan v. Commonwealth,

10

157 Va. 867, 878, 161 S.E. 297, 300 (1931); <u>Kelley v. Commonwealth</u>, 140 Va. 522, 536, 125 S.E. 437, 441 (1924).  We have also stated that "[t]his is an appellate court, and [this Court] hears cases on the theory upon which they were tried in the [circuit] court, reviewing those points properly raised, decided, and preserved."  <u>Pearsall v. Richmond Redevelopment & Housing Authority</u>, 218 Va. 892, 908, 242 S.E.2d 228, 237 (1978) (quoting <u>Strauss v. Princess Anne Marine and Bulkheading Co.</u>, 209 Va. 217, 221-22, 163 S.E.2d 198, 202 (1968)).  The Transportation Commissioner will not be permitted to argue in this Court that Target may not recover any damages for loss of visibility when, in the circuit court, the Transportation Commissioner asserted that Target is entitled to recover damages if it does not have "reasonable visibility" of its property.

Additionally, the circuit court implicitly held that proposed Jury Instruction 21 was confusing, and the court did not think that the jury would understand that instruction.  In his brief filed in this Court, the Transportation Commissioner does not challenge the circuit court's ruling that the jury would not understand proposed Jury Instruction 21.  Therefore, the circuit court's ruling is the law of this case, and we will not disturb that ruling.  <u>Today Homes, Inc. v. Williams</u>, 272 Va. 462, 470, 634 S.E.2d 737, 742 (2006); <u>Owens-Corning</u>

11

Fiberglas Corp. v. Watson, 243 Va. 128, 136, 413 S.E.2d 630, 635 (1992).

## VI.

The Transportation Commissioner argues that the circuit court erred by denying proposed Jury Instruction 18, which states:

> "Use of the subject property is already restricted by local zoning ordinances. Your calculation of damages, if any, to the remaining property must be based solely on the negative effects on the fair market value to the remaining property resulting from the taking alone, beyond those restrictions already imposed on the property.
> "If the taking has caused no additional negative effects on fair market value to the remaining property beyond those created by the zoning ordinance restrictions, you may not award any damages."

The Transportation Commissioner argues in this Court that the circuit court's denial of this instruction was prejudicial because the zoning classification of Target's property was relevant to the value of the property, and the zoning classification required obstructions to visibility of the property upon the construction of Roberts Parkway.

We do not consider the Transportation Commissioner's arguments because the Transportation Commissioner did not raise these issues in the circuit court. The Transportation Commissioner made the following argument in the circuit court regarding Jury Instruction 18:

12

"[Counsel for the Transportation Commissioner]: All right, Your Honor. The issue in this case that the Commonwealth has tried to present is that the flow of traffic around the property has not changed or damaged visibility.

"All these instructions – specifically, 19, 20, and 21, deal specifically with our argument that, based on the traffic patterns on the roadway, they have not been damaged. These are all correct statements of – well, let me –

. . . .

"[The Court]: The question is whether or not [the proposed instructions] are appropriate to give as an instruction, as opposed to being correct statements of law.

"[Counsel for the Transportation Commissioner]: Well, as I said, Your Honor, I mean, the basis of our case has been, based on the flow of traffic around the property – I mean, their argument is two sides, one side. Our argument is that, based on the flow of traffic around the property, [Target has] not been damaged, based on the visibility, you know, the landscaping, how the traffic passes in front of the property.

"All of that mitigates any damages [Target] may have stated, so, therefore, it is important that correct statements of the law regarding the flow of traffic around the property are given to the jury."

The Transportation Commissioner may not assert, for the first time on appeal, a new argument in support of Jury Instruction 18. Rule 5:25.

VII.

The Transportation Commissioner contends that the circuit court erred by failing to grant its proposed Jury Instruction 19 that states:

"The right to regulate and control traffic in the interest of public safety is a proper exercise

13

of the Commonwealth Transportation Commissioner's police power.  The closure of public streets is a proper exercise of that police power.  The landowner can only recover damages if he has suffered some special damage to his land that is different than damages suffered by the public.  If the landowner has not suffered any special damages from the closure of that road, you may not award any damages to the landowner."

The Transportation Commissioner argues that the closure of roads is "a proper and non-compensable exercise of the [Transportation Commissioner's] police power."  Continuing, the Transportation Commissioner asserts that the circuit court's refusal to grant this instruction prejudiced the Commonwealth because the jury did not understand that it could not compensate Target for damages to the residue caused by the closure of a public roadway.

The Transportation Commissioner did not assert in the circuit court that Target could not recover damages for loss of visibility because the Commonwealth has the right to regulate and control traffic and that the closure of roads is a proper and non-compensable exercise of the Commonwealth's police power.  We will not permit the Transportation Commissioner to assert these arguments for the first time on appeal.  Rule 5:25.

## VIII.

The Transportation Commissioner asserts the following assignment of error:  "The trial court erred in failing to

14

find that the jury commissioners' report is contrary to the evidence at trial."  Rule 5:17(c) states:  "An assignment of error which merely states that the judgment or award is contrary to the law and the evidence is not sufficient."  Thus, we do not consider this assignment of error.

IX.

The Transportation Commissioner argues that the circuit court erred in failing to set aside the jury's report because the award of damages was excessive.  We disagree with the Transportation Commissioner.

This Court has repeatedly held that in an eminent domain proceeding,

> "the report of the commissioners[4] is entitled to great weight, is prima facie correct, and must be confirmed unless 'good cause be shown against it.' Where there is a conflict of evidence before the commissioners neither the trial court nor this [C]ourt can set aside the award unless it be shown that the commissioners proceeded upon erroneous principles, or unless the amount allowed is so grossly inadequate or excessive as to show prejudice or corruption on their part.  This is so because the commissioners may base their finding largely upon facts obtained by their own view of the property which do not appear in the record."

Highway Commissioner v. Carter, 216 Va. 639, 641, 222 S.E.2d 776, 777 (1976) (quoting Kornegay v. City of Richmond, 185 Va. 1013, 1024, 41 S.E.2d 45, 50 (1947); accord Highway

15

Commissioner v. Frazier, 214 Va. 556, 558, 203 S.E.2d 350, 351 (1974); Massie v. Highway Commissioner, 209 Va. 365, 368, 164 S.E.2d 696, 698 (1968); Highway Commissioner v. Skillman, 206 Va. 39, 41-42, 141 S.E.2d 700, 702 (1965).  In the record before this Court, the Transportation Commissioner has failed to establish that the report of the jurors is so excessive as to show prejudice or corruption.

X.

For the foregoing reasons, we will affirm the judgment of the circuit court.  We observe, however, that we do not decide whether a landowner, whose real property is the subject of a condemnation proceeding, may recover damages for loss of visibility to the residue of the real property.  This issue remains undecided in this Commonwealth.

Affirmed.

---

[4] Pursuant to Code §§ 25.1-100 and -220, the body that determines just compensation in condemnation proceedings is referred to as a jury.