PRESENT: All the Justices

CRAIG M. LINNON

                                        OPINION BY
v.  Record No. 130179          JUSTICE WILLIAM C. MIMS
                                     January 10, 2014
COMMONWEALTH OF VIRGINIA


             FROM THE COURT OF APPEALS OF VIRGINIA


     In this appeal, we consider whether a teacher had a

custodial or supervisory relationship with a student within the

meaning of Code § 18.2-370.1(A).  We also consider whether

arguments relating to proposed jury instructions were properly

preserved.

         I.    BACKGROUND AND MATERIAL PROCEEDINGS BELOW

     Craig Linnon taught a building trades class at a

vocational school.  He also was assigned the responsibility of

supervising students in the cafeteria during lunch one day each

week and on the sidewalk outside his classroom before, after,

and between classes each day.  His wife, Angela, was the school

nurse.  She also occasionally monitored a cosmetology class

when the teacher stepped out.  A.G. was a 16-year-old female

student in the cosmetology class.  A.G. was not one of Craig's

students but they saw each other every day when he monitored

the sidewalk near the bus loading zone.

     In December 2009, A.G.'s cosmetology class had a party on

school grounds to celebrate the end of the semester.  At the

party, Angela invited A.G. and A.G.'s female friend to the Linnons' home that night. The two girls accepted the invitation and the Linnons picked them up that evening. At their home, the Linnons supplied A.G. and her friend with alcohol in exchange for marijuana. Craig told A.G. that Angela had sexual fantasies about her and that he had a video of Angela fellating one of his male students. A.G. and her friend were disturbed by the sexual content of the conversation and decided to leave. Craig drove them to the friend's home.

The following night, the Linnons again invited A.G. to their home. A.G. returned in the company of Jared Todd, her ex-boyfriend, and Tyler Scott, Todd's friend. Both Todd and Scott were 18 years old. Todd was one of Craig's students. The Linnons and the teenagers drank alcohol; the Linnons, Scott, and A.G. also smoked marijuana.

The group began playing a sex-themed version of Charades in the living room. The game devolved into a sexual orgy when Angela actually fellated Todd and Scott rather than merely miming. During the activities that followed, Craig inserted his penis into A.G.'s mouth. Craig also inserted his fingers into A.G.'s vagina and anus. He also implored her to have sex with Angela.

Sometime thereafter, Todd and Scott went to the bathroom and decided to leave the Linnons' home. When A.G. realized

2

Todd and Scott had left the living room, she found her clothes and got dressed. When Todd and Scott returned from the bathroom, they got dressed and announced that they were leaving. The three teenagers departed as the Linnons continued having sex on the living room floor.

Craig was subsequently indicted on three counts of taking indecent liberties with a minor by a person in a custodial or supervisory relationship, in violation of Code § 18.2–370.1(A).[1] He and Angela were tried jointly but were represented by separate counsel. At trial, he moved to strike both when the Commonwealth rested its case and at the close of the evidence, arguing that the Commonwealth failed to prove that he had a custodial or supervisory relationship with A.G. The circuit court denied his motions. Angela objected to three of the Commonwealth's proposed jury instructions and Craig objected to a fourth. The court also rejected two jury instructions Craig proposed. The jury thereafter convicted Craig on all three counts and he was sentenced to a term of eleven years' active incarceration.

Craig appealed to the Court of Appeals, asserting that the circuit court erred by denying his motions to strike, by

---

[1] Craig also was indicted on additional offenses not relevant to this appeal. Angela was indicted on several charges relating to this and other incidents but she is not a party to this appeal.

granting the Commonwealth's four proposed jury instructions over defense objections, and by rejecting his proposed jury instructions. The Court of Appeals held that the circuit court did not err in denying Craig's motions to strike because the evidence showed he had a custodial or supervisory relationship over A.G. It concluded that his argument about the Commonwealth's proposed jury instructions was not preserved for the purposes of Rule 5A:18 because he failed to state any ground for his objection to one and he did not join Angela's objections to the other three. Finally, it determined that the circuit court did not abuse its discretion in refusing his proposed jury instructions because it had already adequately instructed the jury on one issue and the other proposed instruction incorrectly stated the law.

We awarded Craig this appeal.

## II. ANALYSIS

### A. MOTIONS TO STRIKE

Craig asserts that the Court of Appeals erred by affirming the circuit court's rulings on his motions to strike because, under its interpretation, mere employment as a teacher when a minor attends school establishes the relationship necessary for conviction under Code § 18.2-370.1(A). We disagree.

> A motion to strike challenges whether
> the evidence is sufficient to submit the

4

case to the jury. What the elements of the offense are is a question of law that we review de novo. Whether the evidence adduced is sufficient to prove each of those elements is a factual finding, which will not be set aside on appeal unless it is plainly wrong. In reviewing that factual finding, we consider the evidence in the light most favorable to the Commonwealth and give it the benefit of all reasonable inferences fairly deducible therefrom. After so viewing the evidence, the question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In sum, if there is evidence to support the conviction, the reviewing court is not permitted to substitute its judgment, even if its view of the evidence might differ from the conclusions reached by the finder of fact at the trial.

Lawlor v. Commonwealth, 285 Va. 187, 223-24, 738 S.E.2d 847, 868, cert. denied ___ U.S. ___, 134 S. Ct. 427 (2013) (internal citations and quotation marks omitted).

Code § 18.2-370.1(A) provides that "[a]ny person 18 years of age or older who, except as provided in § 18.2-370, maintains a custodial or supervisory relationship over a child under the age of 18 and is not legally married to such child and such child is not emancipated who, with lascivious intent, knowingly and intentionally" engages in certain proscribed acts "shall be guilty of a Class 6 felony." The purpose of the statute "is to protect minors from adults who might exploit certain types of relationships." Sadler v. Commonwealth, 276

5

Va. 762, 765, 667 S.E.2d 783, 785 (2008). The key question in determining whether a given relationship falls within the statute is whether the defendant "had the responsibility for and control of the [child's] safety and well-being." Krampen v. Commonwealth, 29 Va. App. 163, 168, 510 S.E.2d 276, 278 (1999); see also Guda v. Commonwealth, 42 Va. App. 453, 459-60, 592 S.E.2d 748, 750-51 (2004) (rejecting the argument that the child must be specifically entrusted to the defendant's care through explicit parental delegation of responsibility).

As a general rule, primary and secondary school administrators and teachers meet this criterion. We have held that school administrators have a responsibility "to supervise and ensure that students could have an education in an atmosphere conducive to learning, free of disruption, and threat to person." Burns v. Gagnon, 283 Va. 657, 671, 727 S.E.2d 634, 643 (2012) (internal quotation marks and alteration omitted). They have "a duty to supervise and care for" all students who are on school premises or engaged in school activities.[2] Id. This responsibility extends to those to whom

---

[2] The vast majority of primary and secondary school students are minors. In Commonwealth v. Peterson, 286 Va. 349, 357, 749 S.E.2d 307, 311 (2013), we assumed without deciding that a similar responsibility existed at post-secondary educational institutions, where many students are adults. Thus, the question in that case was not whether the responsibility existed but whether the institution had a

administrators assign it within the scope of the assignment, even those who are not teachers and have no students.[3] When an administrator assigns this responsibility to a teacher in addition to the teacher's classroom duties, it encompasses students not enrolled in the teacher's classes.

The evidence established that Craig was assigned responsibility for student safety and supervision in the cafeteria one day each week and on the sidewalk before, after, and between classes each day. This assignment was beyond the scope of his regular classroom duties and encompassed students not enrolled in his classes. He therefore had the relationship required by the statute with respect to A.G. even though she was not his student.

However, Code § 18.2-370.1(A) also requires that the acts proscribed by the statute occur while the defendant "maintains" the required relationship. The proscribed acts in this case did not occur on school premises or during any school activity. Accordingly, Craig's mere status as a teacher is insufficient

___

specific duty to warn students about the potential for injury arising from the criminal acts of a third party. Id.

[3] For example, in Guda, the defendant was a school security officer and assistant football coach and the victim was 15-year-old female tenth grader. The defendant encountered the victim in the hall during class. The victim asked the defendant for a hall pass and he directed her to his office in the boy's locker room, where he assaulted her. 42 Va. App. at 455-56, 592 S.E.2d at 749.

to warrant conviction.  Conversely, the facts that the proscribed acts occurred at his home and were unrelated to any school activity are insufficient by themselves to warrant acquittal.

In Sadler, we considered the case of a softball coach convicted of molesting a minor female on his team.  Ten days after a team fundraiser and three days before a softball tournament, the defendant visited the victim at her home, where he kissed her and rubbed her buttocks.  He also showed her the team's new uniforms.  276 Va. at 764, 667 S.E.2d at 784.  On appeal, the defendant argued that he was not acting in his capacity as a coach during the visit and that the conduct therefore did not occur in the context of the relationship required for conviction under Code § 18.2-370.1(A).  Id. at 765, 667 S.E.2d at 784.  We rejected that argument, holding that a defendant may maintain the required relationship even when the proscribed acts occur outside the context giving rise to it.  We concluded that "[w]hether such a relationship exists at the time of the offending conduct is a matter of fact to be determined on a case by case basis."  Id. at 765, 667 S.E.2d at 785.

That is the rule to be applied here.  Although the acts occurred at Craig's home outside school hours and during the winter recess, school was due to resume in a few weeks and he

8

and A.G. would again see each other there on a daily basis as he performed assigned administrative duties. These facts are materially indistinguishable from those in Sadler. There, the proscribed acts took place at the victim's home. The required relationship existed several days before (during the team fundraiser) and several days after (during the softball tournament). While the required relationship may have been abeyant in the interstice, it did not cease to exist. Rather, it continued, with a known past and an expected, imminent future. See id. at 765-66, 667 S.E.2d at 785.

Moreover, A.G. testified that when she went back to school in January, Craig lay in wait for her and pursued her as she went to class:

> He was waiting on the inside of the building. It was very close to the bell being rung, so it was weird; he would only be outside. . . . I saw every other girl walk past him and he didn't say a word to them, so I knew he was waiting for me to come.
>                 . . . .
> I kept walking and I could see his reflection in the glass door coming after me.
>                 . . . .
> He said, "That was the best night I ever had, and I hope you come over again."

This testimony establishes that Craig renewed his advances at school, where the relationship required by the statute

9

undoubtedly existed.  The jury could reasonably infer from Craig's conduct that his relationship with A.G. was the same whether they were on or off school grounds, and whether school was in or out of session.  Moreover, he chose to initiate predatory contact at school, where he held a position of authority and where A.G. was a captive audience, unable to resist or avoid contact with him.  This is precisely the type of exploitation the General Assembly enacted the statute to deter.  Sadler, 276 Va. at 765, 667 S.E.2d at 785.

Accordingly, we conclude that there was sufficient evidence from which the jury could find that the proscribed acts occurred while Craig "maintain[ed] a custodial or supervisory relationship" for the purposes of Code § 18.2-370.1(A).

### B.  JURY INSTRUCTIONS

### 1. THE COMMONWEALTH'S PROPOSED JURY INSTRUCTIONS

The Commonwealth proposed four contested jury instructions that were given to the jury by the circuit court.  The first stated, "A custodial relationship arises when the supervising adult exercises care and control over the child, with the care including the responsibility for and control of the child's safety and well being."  The second stated, "The term 'custody' is not limited to legal custody.  It can include those standing in loco parentis such as teachers or babysitters who may have

10

temporary custody of children." The third stated, "One may become a person 'responsible for the care of a child' by a voluntary course of conduct and without explicit parental delegation of supervisory responsibility or court order." The fourth stated, the "[o]ffense of taking indecent liberties with a minor does not require proof of a direct nexus of any type between the custodial or supervisory relationship and the defendant's wrongful conduct." In his appeal to the Court of Appeals, Craig asserted that these proposed jury instructions were incorrect statements of the law.

We focus initially on the first three proposed jury instructions. The Court of Appeals ruled that only Angela objected to them and therefore Craig failed to preserve his argument for appeal under Rule 5A:18. Craig asserts that the Court of Appeals erred because the circuit court understood the joint nature of the defense, and therefore Angela's objections should be imputed to Craig even though he did not expressly join them. He also argues that the purpose of the contemporaneous objection rule is to ensure that the circuit court has an opportunity to rule on the argument before it is submitted to the appellate court as ground for error. He contends Angela's objection was sufficient to fulfill this purpose. According to him, the question is whether the circuit

court had an opportunity to rule on the issue, not who raised it.  We disagree.

We review interpretations of the Rules of this Court de novo.  LaCava v. Commonwealth, 283 Va. 465, 469-71, 722 S.E.2d 838, 840 (2012).  Although we have never before considered whether an objection raised by one party may be attributed to another party who does not expressly join it, courts that have considered that question have answered in the negative.  E.g., Barnes v. State, 310 S.E.2d 777, 778 (Ga. App. 1983) ("If several parties are entitled to make an objection, and it is made by any number less than all, it does not inure to the advantage of the party or parties not joining in it.  Thus, where a defendant does not expressly adopt the objection of a co-defendant, he thereby waives that objection and may not utilize it to gain review."); accord Daniels v. Yancey, 175 S.W.3d 889, 892 (Tex. App. 2005); Cook Assocs. v. Warnick, 664 P.2d 1161, 1165 (Utah 1983); Thomas v. Bank of Springfield, 631 S.W.2d 346, 351 (Mo. App. 1982); Roskoten v. Odom, 87 P.2d 338, 340 (Okla. 1939).  We adopt the general rule articulated in these cases and hold that one party may not rely on the objection of another party to preserve an argument for appeal without expressly joining in the objection.

Craig also argues that the circuit court understood that the two defendants were presenting a joint defense.  His

argument is contradicted by the record. Tellingly, Craig expressly noted his separate objection to the Commonwealth's fourth proposed jury instruction, stating through counsel "Judge, I'd like to note an objection to the fourth one offered by the Commonwealth," while remaining silent as to the preceding three. Further, the record reflects at least six additional occasions where one of the defendants expressly joined in the other's objections to preserve an argument for appeal. We therefore reject Craig's argument that this case calls for an exception to the general rule we adopt today. Accordingly, the Court of Appeals did not err in concluding that Craig did not preserve for appeal any objection to these three proposed instructions.

We now turn to the fourth proposed jury instruction. Although Craig did object, the Court of Appeals again declined to consider his argument, determining that it was not preserved under Rule 5A:18 because he failed to state a basis for his objection at trial. Craig asserts that the Court of Appeals erred because this proposed jury instruction directly relates to whether the Commonwealth was required to prove a direct nexus between the required relationship and the proscribed acts. He notes that he and the Commonwealth vigorously contested that question in their arguments on his motion to strike, which preceded the circuit court's consideration of the

13

proposed jury instructions. He asserts the circuit court therefore was fully apprised of the argument relevant to this proposed jury instruction and intelligently ruled on it. We agree.

Craig argued on his first motion to strike that the Commonwealth was required to demonstrate a nexus between any relationship with A.G. at school and the proscribed acts. The Commonwealth responded that, under Sadler, no such nexus was required. The circuit court rejected Craig's argument and denied the motion. Accordingly, this argument was adequately presented to the circuit court to provide it "an opportunity to rule intelligently on the issue[]." Scialdone v. Commonwealth, 279 Va. 422, 437, 689 S.E.2d 716, 724 (2010) (internal quotation marks omitted).

Although Craig's motion and argument were made before he presented his case, he renewed them at the conclusion of all the evidence. The circuit court again rejected the argument and denied the motion. It then proceeded immediately to consider jury instructions:

> The motions to strike are overruled. Your objections are noted for the record. All prior motions are incorporated and the rulings are the same.
> We're now ready to discuss instructions.

14

Both Rule 5A:18 and Rule 5:25 require an objection to be timely and Craig's objection was. The basis of the objection was encompassed by his argument on the motions to strike, which the circuit court had recently considered and rejected. We conclude that this was sufficient to satisfy the Rules. The Court of Appeals therefore erred in determining under Rule 5A:18 that Craig failed to state a basis for his objection to the fourth proposed jury instruction.

Nevertheless, the error was harmless because Craig's argument on appeal is not the one he made to the circuit court.[4] On appeal, Craig argues that the instruction was misleading because the word "nexus" encompasses the temporal association suggested by the word "maintain[]" as used in Code § 18.2-370.1(A). As noted above, the required relationship must exist at the time of the proscribed acts. Craig argues that the instruction that no proof of a nexus "of any type" was necessary for conviction therefore had a tendency to mislead the jury that the relationship and the proscribed acts need not coincide as the statute requires.

---

[4] "Under the doctrine of harmless error, we will affirm [a lower] court's judgment when we can conclude that the error at issue could not have affected the court's result." Dorr v. Clarke, 284 Va. 514, 526, 733 S.E.2d 235, 242 (2012) (internal quotation marks omitted).

15

Craig did not make this argument below.  His argument on the motion to strike was limited solely to the issue we considered in Sadler and his attempt to distinguish that case from this one on their facts.[5]  He therefore did not preserve this argument for appeal and we will not consider it.  Rule 5:25; see also Online Res. Corp. v. Lawlor, 285 Va. 40, 57, 736 S.E.2d 886, 895 (2013); Commonwealth Transp. Comm'r v. Target Corp., 274 Va. 341, 351-52, 650 S.E.2d 92, 97-98 (2007).  Accordingly, the Court of Appeals' erroneous determination that Craig failed to state any basis for his objection to the instruction is harmless.

2. CRAIG'S PROPOSED JURY INSTRUCTIONS

Craig proposed two jury instructions.  The first stated, "One who is a guest is one who decides on her own to leave the home, and where the host has no personal authority to direct or punish the guest."  The second stated, "Only those persons who maintain a custodial relationship with their victim can be convicted of Indecent Liberties."  The circuit court refused both and the Court of Appeals affirmed its rulings.

---

[5] Although Craig referred to the winter break in his argument on the motion to strike, he did not suggest that the break terminated the custodial or supervisory relationship.  To the contrary, he argued that the fact of the break, together with his limited contact with A.G. at school and the lack of parental entrustment or knowledge with respect to her presence at his house, was evidence that the relationship was not custodial or supervisory.

16

Craig argues that the first proposed jury instruction was necessary "to explain the 'hostess and guest relationship' referenced in" another of his proposed jury instructions, which the circuit court gave to the jury.[6]  However, he did not make this argument in support of the refused jury instruction to circuit court.  We therefore will not consider it on appeal. Rule 5:25; see also Commonwealth Transp. Comm'r, 274 Va. at 351-52, 650 S.E.2d at 97-98.[7]

Craig argues that the second proposed jury instruction was necessary to correct other instructions proposed by the Commonwealth and given to the jury by the circuit court. According to those instructions, he argues, the Commonwealth need only prove that Craig "maintained a custodial or supervisory relationship over A.G." (Emphasis added.)  He concludes that the use of the preterite verb form "maintained" indicated that the required relationship need not exist at the time of the proscribed acts.  Again, he made no such argument to the circuit court.  Furthermore, he did not object to the

_____

[6] That instruction stated, "For a custodial or supervisory relationship to exist, the custodian or supervisor must hold some form of legal or actual authority over the child.  Those who maintain [a] hostess and guest relationship do not maintain a custodial or supervisory relationship."

[7] Although the record reveals that Angela argued in favor of the "hostess-and-guest relationship" instruction, neither she nor Craig offered any argument in support of this refused instruction he now contends was necessary to explain it.

17

proposed jury instructions containing the preterite verb form. We therefore will not consider his argument on appeal. Rule 5:25; see also Online Resources, 285 Va. at 60-61, 736 S.E.2d at 897; Commonwealth Transp. Comm'r, 274 Va. at 351-52, 650 S.E.2d at 97-98.

## II. CONCLUSION

For the foregoing reasons, we will affirm the judgment of the Court of Appeals.

Affirmed.

JUSTICE McCLANAHAN, concurring.

I concur in the Court's judgment, except as to the Commonwealth's fourth jury instruction. The Court of Appeals found that the argument with respect to that instruction was waived under Rule 5A:18. I agree and would affirm that ruling.

JUSTICE POWELL, with whom JUSTICE LEMONS and JUSTICE MILLETTE join, dissenting.

In this case, the majority takes the position that Craig preserved his argument with regard to whether the Commonwealth's fourth proposed jury instruction was a correct statement of the law. Having determined that he did preserve this argument, the majority then takes the position that Craig did not actually preserve the issue for appeal because the

18

argument he makes here is not the same as the one he made before the trial court and, therefore, the trial court's decision to give an incorrect jury instruction was harmless error. Notwithstanding the obvious internal inconsistency in the majority opinion regarding preservation, I believe that Craig's argument to the trial court clearly encompassed the argument he now makes to this Court. Accordingly, I must respectfully dissent.

As an initial matter, I believe it is important to address the fact that the Commonwealth's fourth proposed instruction is, in fact, a patently incorrect statement of the law.

> We review jury instructions to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises. . . . It is error to give an instruction that incorrectly states the law; whether a jury instruction accurately states the relevant law is a question of law that we review de novo.

Lawlor v. Commonwealth, 285 Va. 187, 228, 738 S.E.2d 847, 870 (2013) (internal quotation marks and citation omitted).

We have further recognized that "a jury verdict based on an erroneous instruction need not be set aside if it is clear that the jury was not misled." Orthopedic & Sports Physical Therapy Assocs. v. Summit Group Props., 283 Va. 777, 784, 724 S.E.2d 718, 722 (2012) (internal quotation marks omitted). However, "it is error to give" an "instruction [that] may

19

reasonably be regarded as having a tendency to mislead the jury." Castle v. Lester, 272 Va. 591, 605, 636 S.E.2d 342, 349 (2006) (internal quotation marks omitted).

The plain language of Code § 18.2-370.1 indicates that the defendant must maintain a custodial or supervisory relationship over the child at the time of the wrongful conduct. In other words, the existence of the relationship at the time of the wrongful conduct must still be proven. See Sadler v. Commonwealth, 276 Va. 762, 765, 667 S.E.2d 783, 785 (2008) ("Whether such a relationship exists at the time of the offending conduct is a matter of fact to be determined on a case by case basis."). Thus, it is the fact that the existence of the necessary relationship coincides with the wrongful act that is the necessary link (i.e., nexus) allowing for a conviction under this statute. Stated another way, absent a custodial or supervisory relationship being maintained (i.e., absent the nexus) at the time of the wrongful act, there can be no conviction under Code § 18.2-370.1.

The purpose of Code § 18.2-370.1 "is to protect minors from adults who might exploit certain types of relationships." Sadler, 276 Va. at 765, 667 S.E.2d at 785. We have recognized that such exploitation is the result of the victim feeling compelled to obey the perpetrator due to the present existence of a custodial or supervisory relationship. Id. The

20

compulsion that facilitates the wrongful act is clearly dependent on the underlying relationship.[1] Thus, while the wrongful conduct does not have to occur at school or during a school-related event, see id., it still must occur because of the underlying relationship formed at school. There must exist a nexus between the relationship and the wrongful conduct. Indeed, it is axiomatic that a defendant cannot be said to have exploited a relationship if there is not a nexus between that relationship and the wrongful conduct.

Thus, the law is clear that the Commonwealth was required to demonstrate a nexus between any relationship with A.G. at school and the proscribed acts. The Commonwealth's fourth proposed instruction, however, takes the exact opposite view, stating that the "[o]ffense of taking indecent liberties with a minor does not require proof of a direct nexus of any type between the custodial or supervisory relationship and the defendant's wrongful conduct." (Emphasis added.) This instruction specifically disavows the need for the Commonwealth to prove an element of the crime, as it strongly implies that the offense of taking indecent liberties with a minor does not

---

[1] To be clear, I do not take the position that the wrongful act must occur during the activity upon which the relationship is based; our holding in Sadler specifically addresses this point. However, the relationship itself must exist and be maintained at the time of the wrongful act-- this is the nexus on which the offense hinges.

21

require proof that the custodial or supervisory relationship was <u>maintained</u> at the time of the wrongful conduct. Accordingly, I believe that the Commonwealth's fourth proposed instruction is a patently incorrect statement of the law.

Furthermore, I believe that not only is the Commonwealth's fourth proposed instruction an incorrect statement of the law, but the language also had the potential to mislead and confuse the jury. Indeed, a jury could interpret this instruction to require that the Commonwealth only prove the wrongful conduct and the existence of a custodial or supervisory relationship at some point in time, but not necessarily at the time that the defendant engaged in the wrongful conduct.

In stating that Craig did not preserve his argument, the majority focuses on the fact that, at one point, Craig attempted to distinguish the facts of the present case from those in <u>Sadler</u>. In so doing the majority neglects the fact that, in <u>Sadler</u>, the issue was whether the custodial relationship existed (i.e., was maintained) outside of activities directly related to that relationship. <u>See</u> 276 Va. at 765, 667 S.E.2d at 785 (rejecting the "assertion that a custodial or supervisory relationship is maintained for purposes of Code § 18.2-370.1 only when the objectionable acts are undertaken in the course of performing activities giving

rise to that relationship"). In other words, the issue in Sadler was whether the necessary nexus existed at all.

Additionally, the majority neglects the entirety of Craig's argument. While arguing that the Commonwealth failed to prove the existence of a custodial relationship, Craig also argued:

> I'll argue to you that the fact that we have a break here is significant. This isn't during the school year. The school semester is over and there's been no evidence that she's continuing the school year or was at that time.

The obvious implication of Craig's argument is that, even if the Commonwealth proved the existence of a custodial or supervisory relationship, the Commonwealth has failed to prove that it was maintained at the time of the wrongful act. Indeed, Craig further argued:

> [T]he requirement of a custodial relationship is not merely a basis for enhancing punishment[;] rather . . . a custodial relationship maintained with respect to the victim is a predicate to guilt. Clearly they [the Commonwealth] have to prove it.
>
> . . . .
>
> As we know, this didn't occur anywhere near the school and [A.G.] readily admitted that there was no related school activity at all. [Craig] was not a teacher of hers at all and had no real contact except at the bus stop. During the school break there's no evidence that she was going back at that time. Looking at that case by case factor

23

analysis, even at this level, the
Commonwealth does not satisfy [its burden].

Thus, it is clear that Craig argued that the Commonwealth was required to prove that there was some connection (i.e., a nexus) between the custodial or supervisory relationship and the wrongful act.

Similarly, the record clearly demonstrates that the trial court understood this to be the argument raised by Craig.  In overruling the motion to strike, the trial court specifically addressed the issue of whether the relationship was maintained at the time of the wrongful act (i.e., whether there was a nexus between the relationship and the wrongful act).  Indeed, the trial court specifically stated:

> Now, the next question is: Does that
> relationship end at the sidewalk outside of
> the school or does it end at the end of the
> school day or as the Commonwealth argues,
> does it continue?
>
> . . . .
>
> If I do accept for purposes of the motion
> that there was a preexisting relationship
> of a custodial and supervisory relationship
> that when the custodian and supervisor
> seeks to engage in additional relationships
> or further relationships with the children
> outside of the venue or the context of the
> school, the other case law is clear that
> the relationship doesn't terminate at the
> sidewalk, it doesn't end when the bell
> rings and that relationship continues.
>
> If I accept the facts here as presented by
> the Commonwealth, it's clear that everyone
> understood that Mr. and Mrs. Linnon were

24

> still the teacher and the nurse and they
> stood in that relationship.

Furthermore, although the majority quotes Craig's second offered jury instruction,[2] it ignores the fact that the trial court expressly stated that it considered it to be a "competing instruction" to the Commonwealth's fourth proposed instruction. This demonstrates that the trial court clearly understood that these instructions were mutually exclusive. This Court has specifically recognized that an "objection may also be shown and preserved where, in a refused instruction, the objecting party propounds the contrary theory to one set forth in a granted instruction." Pilot Life Ins. Co. v. Karcher, 217 Va. 497, 498, 229 S.E.2d 884, 885 (1976). Although the instructions in this case are structured differently, the only significant difference between the instructions was the use of the term "maintain" in Craig's instruction and "nexus" in the Commonwealth's fourth proposed jury instruction. As such, it is clear that these were the terms that the trial court considered to be mutually exclusive.

Thus, in my opinion, Craig placed the issue of whether the Commonwealth must prove a nexus between the custodial relationship and the wrongful act squarely before the trial

---

[2] Craig's instruction stated: "Only those persons who maintain a custodial relationship with their victim can be convicted of Indecent Liberties."

25

court and, indeed, the trial court ruled on the argument. Accordingly, I believe that this issue was preserved and that the Commonwealth's fourth proposed jury instruction was an incorrect statement of the law that had a tendency to mislead the jury. In my view, the verdict must be set aside and the case should be remanded for retrial, should the Commonwealth be so inclined.